**STATE of Minnesota, Respondent,**

v.

**Donald DIXON, Appellant.**

**No. C1–87–175.**

Court of Appeals of Minnesota.

Nov. 24, 1987.
Review Denied Jan. 20, 1988.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Bradford Colbert, Asst. State Public Defender, St. Paul, for appellant.

Considered and decided by NORTON, P.J., and MULALLY and LOMMEN, JJ.,* with oral argument waived.

## OPINION

NORTON, Judge.

Donald Dixon appeals from judgment of conviction for second degree assault, arguing that the admission of *Spreigl* evidence denied him a fair trial. Appellant also challenges the trial court's upward departure from the sentencing guidelines, on the grounds that the sentence is longer than the statutory maximum, is not justified by aggravating circumstances, and is based on an improperly computed criminal history score. We affirm, but modify the sentence to conform to the statutory maximum.

## FACTS

Appellant's conviction arises from confrontations between appellant and Michael Gorden, a bouncer for Moby Dick's Bar in downtown Minneapolis. On August 9, 1986, at about 8:00 p.m., Gorden prevented appellant from being served alcohol at the bar, saying appellant was intoxicated. Appellant resisted Gorden's attempts to remove him from the bar, and a fight ensued. Gorden and another bouncer eventually subdued appellant and held him in a closet inside the bar until the police arrived.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

Appellant was injured in the fight, and also might have suffered a convulsion after the fight was over. He was taken by ambulance to Hennepin County Medical Center. On the way to the hospital, appellant told the ambulance driver that he had been wronged by Gorden and that he was going to return to Moby Dick's "and settle up" with him.

Appellant was treated and released from the hospital. Later that evening, he returned to Moby Dick's. Appellant testified that he saw Gorden at the front door of the bar at about midnight, that he called Gorden a bully, and that he told him he could beat him if the other bouncers were not there to help Gorden. Appellant further testified that Gorden told him to come to the back of the bar after the 1:00 a.m. closing time if appellant wanted to make good on his challenge. Gorden, however, testified that he did not see appellant during this period of time, nor did he have such a conversation with him.

After closing, Gorden left the bar by the back door. Appellant was waiting near the door, and he attacked Gorden. A knife appeared, and both appellant and Gorden received stab wounds and other injuries. Appellant had control of the knife. Another bouncer intervened by hitting appellant on the head. A third bouncer also joined in the fight, trying to take the knife from appellant. Gorden eventually got the knife, and he stabbed appellant several times.

The police were called, and both appellant and Gorden were taken to Hennepin County Medical Center for treatment. Gorden was hospitalized with stab wounds to his arm, chest and back. Appellant was more severely injured, having received several deep stab wounds, one of which penetrated his chest wall and collapsed his lung. He was in surgery for several hours, and was then placed in intensive care.

The day after the incident, police sergeant Gary Weimar questioned appellant. Weimar later testified appellant told him that after he was released from the hospital earlier in the evening he got a knife, went to the back door of Moby Dick's, and waited for Gorden. He also told him that if he had had $50, he would have gotten a gun and would have killed Gorden. Appellant told Weimar that he confronted Gorden with the knife when Gorden came out of the bar at closing time. He stated he did not remember anything after that, as he was knocked unconscious by a blow to his head.

At trial, appellant's testimony contradicted his previous statements to the police and the testimony of Gorden and the other bouncers. Appellant denied having a knife, and denied telling Weimar that he went home to get a knife. Appellant stated he told Weimar that if he really had wanted to hurt Gorden, he would have acquired a gun.

Appellant testified that he attacked Gorden with his fists. He testified that he felt a knife blade cut him as he and Gorden were struggling, that he attempted to grab the knife from Gorden, but that someone then hit him on the head and knocked him unconscious.

Upon hearing appellant testify that he did not have a knife, the trial court permitted the state to introduce *Spreigl* evidence, for the purpose of showing appellant's intent. The *Spreigl* evidence related to a confrontation on June 14, 1986, between appellant and a customer in another bar in downtown Minneapolis. The bar manager testified that appellant was asked to leave the bar, that he got angry, and that he left only after dropping a glass on the floor. He returned to the bar later that evening, and was again asked to leave, which he did without incident. However, he returned to the bar a third time, and got into a fight with a bar customer named Sawyer, during which Sawyer threw a pitcher at appellant.

Appellant chased Sawyer out of the bar and stabbed him several times with a hunting knife. The police found appellant at the scene and in possession of the bloodied knife, and arrested him. He later admitted to fighting with Sawyer, but denied stabbing him, saying he only hit Sawyer a couple of times in the chest with the knife encased in its sheath. Appellant was not

charged with any offenses arising out of this incident.

The jury convicted appellant of assault in the second degree, defined as an assault with a dangerous weapon. *See* Minn.Stat. § 609.222 (1986). The judge computed a criminal history score of 4, and applied the sentencing guidelines to determine a presumptive sentence of 44 months. The judge then departed durationally and sentenced appellant to 68 months, citing several aggravating factors.

## ISSUES

1. Did the introduction of *Spreigl* evidence deny appellant a fair trial?

2. Did the trial court improperly sentence appellant by
   a) exceeding the statutory maximum sentence?
   b) failing to justify an upwards durational departure?
   c) improperly computing his criminal history score?

## ANALYSIS

1. The decision to admit evidence of other crimes is largely within the discretion of the trial court. *State v. Campbell,* 367 N.W.2d 454, 460 (Minn.1985). When evidence of defendant's participation in the prior offense is clear and convincing, as here, the court must determine whether the evidence is relevant and material to the state's case and whether the probative character of the evidence outweighs its potential for unfair prejudice. *State v. Filippi,* 335 N.W.2d 739, 743 (Minn.1983). In addition, "there must be some relationship in time, location, or *modus operandi* between the crime charged and the [prior crime], and further, the direct or circumstantial evidence on the issue in question must be weak or inadequate." *State v. Stagg,* 342 N.W.2d 124, 127 (Minn.1984).

■ There are substantial similarities between the June 1986 assault and the August 1986 assault. They occurred about two months apart. They both occurred in downtown Minneapolis bars. They both involved appellant's unwillingness to leave the bars when directed to do so by bar employees, and a return to the bar by appellant following his forced departure. Finally, they both involved appellant's use of a large knife and his subsequent denial that he possessed a knife (the present offense) or that he used a knife (the *Spreigl* offense).

Appellant argues the *Spreigl* evidence is irrelevant because he has admitted that he possessed the intent necessary to prove second degree assault. Appellant admits assaulting Gorden. However, he denies assaulting him with a knife. Proof of appellant's intent to use a knife on Gorden was essential to proving that he assaulted Gorden "with a dangerous weapon." Minn. Stat. § 609.222 (1986). Moreover, the state's evidence on this issue was weak—the state had no proof that appellant produced the knife, as Gorden and the other bouncer alleged, and other evidence indicated an unrestrained use of the knife by Gorden when he had control of the knife. Thus, evidence that appellant had recently produced and used a knife in a confrontation in a bar was highly relevant to appellant's intent in assaulting Gorden. The trial court properly exercised its discretion in admitting the *Spreigl* evidence.

### 2. a. *Statutory Maximum*

■ Appellant challenges the trial court's imposition of a 68–month sentence on the grounds that the sentence exceeded the statutory maximum sentence for second degree assault. *See* Minn.Stat. § 609.222 (second degree assault is punishable by a sentence of "not more than five years"). Respondent concedes the sentence exceeded the statutory 60–month maximum. The trial court offered no explanation for its failure to heed the statutory maximum. The supreme court has held that "the only absolute limit on sentence duration is that provided by the legislature in the statute defining the offense." *State v. Mortland,* 399 N.W.2d 92, 94 n. 1 (Minn.1987). Appellant's challenge on this ground is well-founded, and the sentence is modified to conform to the statutory maximum of 60 months.

### b. *Aggravating Circumstances—Upward Departure*

Appellant also challenges the court's upward durational departure from the presumptive sentence of 44 months to 68 months. Departures from presumptive sentences must be justified by "substantial and compelling circumstances." Minnesota Sentencing Guidelines I.4, II.D. The trial court has broad discretion in determining sentence departures, and the appellate court "generally will not interfere with the exercise of that discretion." *State v. Kindem*, 313 N.W.2d 6, 7 (Minn.1981).

The trial court relied on six aggravating circumstances in departing from the presumptive sentence: 1) extremely abusive behavior, 2) premeditation, 3) proof of similar crimes of violence, 4) chemical dependency and an unwillingness to deal with the dependency, 5) behavior that is substantially more severe than that for conviction of second degree assault, and 6) evidence of vengeance and predation that indicates a sentence that considers public protection and retribution. At the sentencing hearing, counsel for appellant conceded premeditation as a valid aggravating circumstance, but challenged all other factors.

■ Appellant properly challenges the validity of three of the six factors used by the trial court. The court should not have considered the *Spreigl* offense. *See State v. Peterson*, 329 N.W.2d 58, 60 (Minn.1983). Nor should the court have relied on the need for "a sentence considering public protection and retribution." *See State v. Hagen*, 317 N.W.2d 701, 703 (Minn.1982). Finally, the court should not have considered appellant's chemical dependency as a factor to justify a durational departure. *State v. Gardner*, 328 N.W.2d 159, 162 (Minn.1983).

■ However, in departing from the presumptive sentence, the trial court properly considered appellant's abusive behavior and his commission of the assault in a particularly serious way. *State v. Higginbotham*, 348 N.W.2d 327, 330 (Minn.1984); Minnesota Sentencing Guidelines II.D.2.b.(2) (aggravating factors include treating the victim with particular cruelty).

The trial court also properly relied on the fact that the conduct involved was substantially more severe than that required for a conviction for second degree assault. *State v. Barber*, 372 N.W.2d 783, 785 ((Minn.Ct.App.1985) (durational departure justified where conduct underlying the offense is particularly serious), *pet. for rev. denied* (Minn. Sept. 19, 1985). In addition, the permanency of the resulting injury is also a permissible factor. *State v. Partlow*, 321 N.W.2d 886, 887 (Minn.1982) (permanency of injuries may justify up to a tripling of the presumptive sentence). Here, the trial court noted that Gorden now has an "ugly scar extending along the length of the inside of his arm."

Thus, although the trial court justified departure on some impermissible factors, departure was justified due to other permissible factors. The trial court did not double the presumptive sentence, which might trigger appellate concern. *State v. Evans*, 311 N.W.2d 481, 483 (Minn.1981). Because of the statutory maximum on the sentence, the departure will be modified to 60 months. Under the circumstances, the trial court's upward durational departure was within its discretion.

### c. *Criminal History Score*

Finally, appellant challenges his sentence on the grounds that the trial court improperly computed his criminal history score. Because the state did not have copies of his out-of-state misdemeanor convictions, appellant claims the state did not meet its burden of "establishing the facts necessary to justify consideration of out-of-state convictions in determining a defendant's criminal history score." *State v. McAdoo*, 330 N.W.2d 104, 109 (Minn.1983) (citing Minnesota Sentencing Guidelines II.B.5).

The "appropriate standard" for documenting a conviction is that contained in the rules of evidence:

The contents of an official record, or of a document authorized to be recorded or filed, including data compilations in any form, if otherwise admissible, may be proved by copy, certified as correct in

accordance with Rule 902 or testified to be correct by a witness who has compared it with the original. *If a copy which complies with the foregoing cannot be obtained by the exercise of reasonable diligence, then other evidence of the contents may be given.*

Minn.R.Evid. 1005 (emphasis added). *See State v. Griffin,* 336 N.W.2d 519, 525 (Minn.1983) (rejecting absolute requirement for certified copies in favor of standard set forth in Rule 1005).

This court has held: "Other evidence of contents includes oral testimony." *State v. Jackson,* 358 N.W.2d 681, 683 (Minn.Ct. App.1984) (citing 1977 committee commentary to Rule 1005). In *Jackson,* the court found that statements of a probation officer regarding the results of his search for defendant's felony record in California were sufficient to meet the Rule 1005 standard. *Id.* at 683. In *Griffin,* the supreme court found the state had met its burden, where there was no certified copy of the conviction, but where defendant did not dispute the fact that he had such a prior conviction. *Griffin,* 336 N.W.2d at 525.

■ Similarly, appellant here does not dispute the fact of conviction, but only the failure to provide better documentation of the conviction. In fact, at the sentencing hearing, appellant's attorney only discussed how to construe and compute the misdemeanor convictions, and did not dispute their existence. The state's attorney also pointed out that differences between Louisiana's civil law system and Minnesota law can create problems. *See Griffin,* 336 N.W.2d at 525 (trial court noted difficulty of obtaining any documents from Cook County, Illinois, particularly certified copies of documents). Under these circumstances, the trial court's use of the prior misdemeanor convictions in computing appellant's criminal history score was within its discretion. *See* Minnesota Sentencing Guidelines II.B.505 comment ("It was contemplated that the sentencing court, in its discretion, should make the final determination as to the weight accorded foreign convictions").

**DECISION**

Except for that part of the sentence that exceeds the statutory maximum sentence, the trial court is affirmed. The sentence is modified to conform to the 60–month statutory maximum.

Affirmed as modified.