**STATE of Minnesota, Respondent,**

v.

**Daniel Leslie MAURSTAD, Appellant.**

**No. A04–1000.**

Court of Appeals of Minnesota.

Dec. 13, 2005.

Mike Hatch, Attorney General, St. Paul, MN; and Greg Widseth, Polk County Attorney, Scott A. Buhler, Assistant County Attorney, Crookston, MN, for respondent.

Bradford Colbert, Legal Assistance to Minnesota Prisoners, St. Paul, MN, for appellant.

Considered and decided by MINGE, Presiding Judge; KALITOWSKI, Judge; and SHUMAKER, Judge.

## OPINION

KALITOWSKI, Judge.

Appellant challenges his sentence and an order denying postconviction relief from his sentence, arguing that (1) he did not waive his sentencing challenge by failing to raise it at trial; (2) his criminal history score should not have included a custody status point; and (3) he was entitled to a jury determination of his criminal history score.

## FACTS

On February 6, 1996, appellant Daniel Leslie Maurstad pleaded guilty to aiding burglary in the second degree. At appellant's sentencing, the court stayed imposition of that sentence and placed him on supervised probation "for a period not to exceed the statutory maximum." At that time, the statutory maximum for aiding and abetting burglary in the second degree was ten years. Minn.Stat. §§ 609.52, subd. 3(2), .582, subd. 2 (1996). On November 3, 1999, the district court discharged appellant from probation.

On December 17, 2003, appellant pleaded guilty to charges of controlled substance crime in the first degree, manufacture of methamphetamine; controlled substance crime in the second degree, sale of methamphetamine; and misdemeanor domestic assault. The plea agreement contemplated that the sentences would run concurrently and that appellant would be sentenced according to the sentencing guidelines.

The Pre–Sentence Investigation Report (PSI) uncovered the 1996 conviction for aiding burglary in the second degree, of which the court had been unaware at the time of the plea hearing. This discovery raised appellant's criminal history score by two points, one point for the prior felony and one point for custody status. Based on a total of three prior crimes and one custody status point, appellant was assigned a criminal history score of four rather than the score of two he had anticipated.

On February 10, 2004, the district court sentenced appellant to concurrent sentences of 78 months on the controlled substance crime in the second degree conviction, 129 months on the controlled substance crime in the first degree conviction, and 90 days for the misdemeanor domestic assault conviction. Both of the felony sentences fell within the presumptive range under the Minnesota Sentencing Guidelines.

On June 3, 2004, appellant filed a notice of appeal with this court. Appellant then requested and received a stay of his appeal so that he could file a postconviction petition in district court. Appellant argued to the postconviction court that the sentencing judge erred by crediting him a custody status point when he was not under criminal justice custody. The postconviction court denied appellant's petition for postconviction relief holding that by failing to object to his criminal history score or to the PSI at sentencing, appellant "waived any objections at the time of sentencing or, at a minimum, has forfeited his right to raise an objection unless he can meet his burden of proving plain error." The stay of appellant's appeal to this court was vacated. Appellant challenges the rulings of the district court and the postconviction court on direct appeal.

## ISSUES

1. Did the postconviction court err by finding that appellant waived his right to challenge his criminal history score?

2. Did the district court err by attributing a custody status point to appellant when calculating his criminal history score?

3. Did the district court violate appellant's Sixth Amendment rights by failing to submit the issue of appellant's criminal history score to a jury?

## ANALYSIS

### I.

▮ Appellant argues that he did not waive his right to contest his criminal history score by failing to challenge the score at sentencing. We agree.

▮ Normally, "[t]he decisions of a postconviction court will not be disturbed unless the court abused its discretion." *Dukes v. State,* 621 N.W.2d 246, 251 (Minn. 2001). But where appellant first files a direct appeal, which this court stays to allow appellant to file a subsequent petition for postconviction relief, we use the standard of review for direct appeals. *Santiago v. State,* 644 N.W.2d 425, 439 (Minn.2002). Whether waiver is established is ordinarily a question of fact. *Meagher v. Kavli,* 251 Minn. 477, 486, 88 N.W.2d 871, 878 (1958). Findings of fact will not be set aside on appeal unless clearly erroneous. Minn. R. Civ. P. 52.01.

[4] The failure to object to an error at trial may constitute waiver of the right to appeal on that basis unless appellant shows that there was plain error affecting substantial rights. *See, e.g., State v. Gutierrez,* 667 N.W.2d 426, 433–34 (Minn. 2003) (upholding jury instructions where appellant failed to object before they were given to the jury); *State v. Taylor,* 650

N.W.2d 190, 205 (Minn.2002) (upholding admission of evidence where appellant failed to object at trial).

■ In the sentencing context, however, this court has not held that errors not raised at trial are barred on appeal. A court may correct an illegal sentence at any time. Minn. R.Crim. P. 27.03, subd. 9. And a defendant can appeal to the court of appeals "from any sentence imposed or stayed by the district court according to the Rules of Criminal Procedure for the district court of Minnesota." Minn.Stat. § 244.11, subd. 1 (2004). In addition, this court has held that a defendant's right to appeal an illegal sentence cannot be waived. *Ballweber v. State,* 457 N.W.2d 215, 218 (Minn.App.1990). Moreover, where there has been no prior direct appeal, the *Knaffla* waiver rule does not apply. *See State v. Knaffla,* 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976) (holding that once a direct appeal has been taken, all matters raised in the direct appeal, and all claims known but not raised, will not be considered in postconviction petitions).

We reject the state's argument that Minn. R.Crim. P. 27.03, subd. 1(D) will be rendered irrelevant if appellant is allowed to raise his posttrial sentencing challenge. Rule 27.03, subd. 1(D) merely describes the procedure by which a defendant may contest the sentencing worksheet or PSI before sentencing. It does not state that sentencing challenges are barred if not raised at trial. Thus, we conclude that allowing this postsentencing challenge does not contradict Minn. R.Crim. P. 27.03, subd. 1(D).

■ Because a criminal defendant cannot waive the right to appeal a sentence, we conclude that the postconviction court erred by finding that appellant had waived his right to appeal his criminal history score, a factor in calculating his sentence, because he did not object to the score at trial.

## II.

■ The state suggests that this court may only review appellant's criminal history score if we find plain error in the district court's determination of the score. We disagree.

The Minnesota Supreme Court applied plain-error analysis to an unobjected-to trial error in *State v. Griller,* 583 N.W.2d 736, 740–42 (Minn.1998). But, in *Griller,* the appellant challenged the district court's jury instructions, not its sentencing. *Id.* at 740. And cases applying the *Griller* plain-error analysis have not applied it to sentencing errors. *See, e.g., State v. MacLennan,* 702 N.W.2d 219, 235– 36 (Minn.2005) (applying plain-error analysis when appellant alleged prosecutorial misconduct for the first time on appeal); *State v. Vick,* 632 N.W.2d 676, 684–85 (Minn.2001) (explaining that failure to object to the admission of evidence at trial waived that challenge on appeal unless the admission was plain error).

We decline to apply plain-error analysis to unobjected-to errors in sentencing. Because a defendant does not waive the right to appeal a sentence by not objecting at trial, the standard for triggering this court's review of the sentence on appeal should not be heightened. We thus conclude that a defendant should not be forced to prove plain error before obtaining the appellate review to which he has an unwaivable statutory right.

Appellant's challenges to his criminal history score involve interpretation of the sentencing guidelines, a question of law subject to de novo review. *State v. Rouland,* 685 N.W.2d 706, 708 (Minn.App. 2004), *review denied* (Minn. Nov. 23, 2004).

Under the 2002 Minnesota Sentencing Guidelines, a custody status point may be assigned when the offender commits the "current offense within the period of the initial length of stay pronounced by the sentencing judge for a prior felony[.]" Minn. Sent. Guidelines II.B.2.c. The comment to the rule states:

The Commission believes that the potential for a custody status point should remain for the entire period of the initial length of stay pronounced by the sentencing judge. An offender who is discharged early but subsequently is convicted of a new felony within the period of the initial length of stay should still receive the consequence of a custody status point.

Minn. Sent. Guidelines cmt. II.B.201.

Appellant contends that the district court erred by assigning him a custody status point because his current offenses were not committed within the "initial length of stay" of his 1996 conviction. We agree.

At appellant's 1996 sentencing, the court stayed imposition of his sentence and placed him on supervised probation "for a period not to exceed the statutory maximum" of ten years. Appellant argues that the "initial length of stay" of that offense ended in 1999 when the court discharged his probation. The state argues that the discharge of appellant's probation "simply has no bearing" on appellant's criminal history score because his "initial length of stay" was ten years.

It is important to note that it is the judge, not the presentencing investigator, who pronounces a defendant's "initial length of stay." *Id.* Here, the judge in 1996 imposed probation for a period "not to exceed" the statutory maximum of ten years. But the phrase "not to exceed" does not define a probationary period. It merely provides the outer limit of that probationary period. And when the court discharged appellant's probation in 1999, that discharge provided the definitive end of his probation and of his "initial length of stay."

The judge's words at sentencing did not impose a ten-year probationary period on appellant, and we decline to read such a meaning into them. We cannot say that an initial length of stay "not to exceed" ten years equals an initial length of stay of ten years. Ambiguities in the sentencing guidelines should be resolved against the state and in defendant's favor. *State v. McGee,* 347 N.W.2d 802, 805 (Minn.1984). We conclude that appellant's "initial length of stay" from his 1996 conviction ended in 1999 and was no longer in effect when he committed the underlying offenses here. Therefore, the district court erred by attributing a custody status point to appellant at sentencing.

We reverse and remand for resentencing. Because we reverse, we do not address appellant's other challenges to the custody status point under the sentencing guidelines.

### III.

Appellant argues that the calculation of his custody status point violated his Sixth Amendment rights under *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). We disagree.

A criminal defendant has a Sixth Amendment right to a jury determination of any fact, except the fact of a prior conviction, that increases his sentence beyond the statutory maximum. *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000); *see also Blakely,* 542 U.S. at 303–04, 124 S.Ct. at 2537. In *Blakely,* the Supreme Court held that the greatest sentence that a

judge may impose is "the maximum sentence [that may be imposed] *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" 542 U.S. at 303, 124 S.Ct. at 2537.

■ This court has held that *Blakely* does not require a jury finding to establish custody status points as part of the defendant's criminal history score. *State v. Brooks,* 690 N.W.2d 160, 163–64 (Minn. App.2004), *review granted* (Minn. March 15, 2005). The *Brooks* court concluded that the determination of a criminal history score, including the custody status point, is analogous to the *Blakely* exception for the fact of a prior conviction. *Id.* at 163. "[C]ustody status points are established by the court's own records" and are "based on the fact that a person has one or more prior convictions." *Id.*

The question of whether appellant was on probation at the time he committed the offenses here was established by looking at the court's records and is based on appellant's prior conviction. We conclude that the district court was not required to submit the question of appellant's custody status point to a jury and could find the custody point on its own without violating appellant's Sixth Amendment right as applied in *Blakely.*

## DECISION

A criminal defendant does not waive the right to object to a criminal history score by failing to object to the score at sentencing. And a defendant is not required to show plain error before this court will review a determination of a defendant's criminal history score.

Finally, we conclude that because *Blakely* does not require a jury finding to establish custody status points as part of a defendant's criminal history score, the district court did not err by failing to submit the issue of appellant's custody status point to a jury.

**Reversed and remanded.**