STATE of Minnesota, Respondent,

v.

Brian Lee MALEY, Appellant.

Nos. A05–782, A05–883.

Court of Appeals of Minnesota.

May 9, 2006.

Mike Hatch, Attorney General, St. Paul, MN and Thomas S. Opheim, Norman County Attorney, Rebecca A. Trapp, Assistant Norman County Attorney, Ada, MN, for respondent.

John M. Stuart, State Public Defender, F. Richard Gallo, Jr., Assistant State Public Defender, Minneapolis, MN, for appellant.

Considered and decided by RANDALL, Presiding Judge; MINGE, Judge; and ROSS, Judge.

## OPINION

ROSS, Judge.

Brian Lee Maley appeals his 54–month prison sentence imposed after he pleaded guilty to a controlled-substance violation. Maley argues that the district court erroneously considered two out-of-state convictions in calculating his criminal-history score. Because the state's burden to establish a sufficient factual basis for the challenged convictions was neither met nor excused, we reverse and remand for resentencing.

## FACTS

Appellant Brian Lee Maley was in a hotel room in Ada when Norman County sheriff's deputies entered to execute an arrest warrant on a woman who was with Maley. Deputies searched the hotel room, uncovering drug paraphernalia, two bags containing a total of 29 grams of methamphetamine, and 50 grams of a liquid that tested positive for methamphetamine. The state charged Maley in a three-count complaint, alleging that he manufactured, possessed, and conspired to sell a controlled substance.

On October 6, 2004, Maley pleaded guilty to an amended charge of one count of second-degree controlled-substance possession, in violation of Minn.Stat. § 152.022, subd. 2(1) (2002). Maley's counsel told the court that in exchange for the plea, the state would recommend that Maley "receive an executed guideline sentence at the low end of the [sentencing guidelines] box [and] would bear any risk as to his criminal-history score. And we believe it will be zero to two, but he bears that risk." The district court ordered a pre-sentence investigation and scheduled the sentencing hearing for November 10, 2004.

A probation officer conducted the investigation. The resulting sentencing worksheet for Maley listed, without substantiating, four felony—level California convictions-two in 1995 and two in 1999—to apply to Maley's criminal-history score and presumptive sentence, weighting each conviction at .5. At the November 2004 sentencing hearing, Maley's counsel requested a continuance to "look into" a "mistake on the pre-sentence investigation," without specifying the nature of the mistake. The state did not object.

At the continued hearing in December 2004, Maley's counsel told the court that he had twice spoken with the probation officer to request authenticated support for the alleged California convictions:

I talked to [the probation officer] about what my objections were and indicated that we needed the actual records from these counties [in California, where appellant's prior convictions occurred], rather than just [the probation officer's] phone calls and her representations because I thought ... we needed something in writing [and] something to confirm what [Maley] actually was convicted of and sentenced to in these out-of-state

jurisdictions to correctly determine what his criminal history would be.

The state's attorney conceded that the probation officer "had not been able to request [the California records] as of yet." The court continued the sentencing proceeding until January 19, 2005, declaring that if the state failed to produce certified copies of the convictions by then, "we'll have to just presume it's a zero criminal-history score."

Before the January 2005 sentencing, the probation officer obtained uncertified documents concerning one of the 1995 convictions, increased that conviction's weight to 1.5 points, and determined that the other alleged 1995 conviction should not be included in Maley's criminal-history score. Although the probation officer never produced documentary support for the 1999 convictions, she did not remove them from the sentencing worksheet. The state therefore proposed that Maley's documented 1995 conviction and the undocumented, alleged 1999 convictions would together weigh 2.5. The district court sentenced Maley to 64 months' imprisonment based on the criminal-history score of 2.5. Although the court did not state how it calculated the score, it appears to have followed the worksheet and assigned a weight of 1.5 to the documented 1995 conviction and .5 to each of the two challenged, undocumented 1999 convictions.

Maley moved to correct his sentence, arguing that the 1995 conviction should be reduced from 1.5 to .5 and that the court must disregard the undocumented 1999 convictions. The state conceded that the 1995 conviction should be weighted only at .5. On March 7, 2005, the district court ordered the sentence corrected to 54 months based on a criminal-history score of 1.5. The order again did not describe how the district court calculated Maley's criminal-history score, but it appears that

the district court assigned a weight of .5 to Maley's documented 1995 conviction based on the state's concession and again assigned .5 to each of the two undocumented 1999 convictions. This appeal follows, with Maley contesting the district court's decision to include the undocumented 1999 convictions in determining his sentence.

## ISSUE

Did the district court abuse its discretion by including Maley's undocumented out-of-state convictions when calculating his criminal-history score?

## ANALYSIS

■ The district court was obliged to address the effect of Maley's alleged prior convictions in deciding Maley's sentence for the present drug offense. Minnesota's Sentencing Guidelines "provide uniform standards for the inclusion and weighting of criminal history information that are intended to increase the fairness and equity" in determining a defendant's criminal-history score. *State v. Reece,* 625 N.W.2d 822, 824 (Minn.2001) (quotation omitted). The guidelines direct that out-of-state felony convictions be included in a defendant's criminal-history score. *Id.*

■ But the district court may not use out-of-state convictions to calculate a defendant's criminal-history score unless the state lays foundation for the court to do so. "The state ... has the burden at a sentencing hearing of establishing the facts necessary to justify consideration of out-of-state convictions in determining a defendant's criminal history score." *State v. McAdoo,* 330 N.W.2d 104, 109 (Minn. 1983). The state must establish by a fair preponderance of the evidence that the prior conviction was valid, the defendant was the person involved, and the crime would constitute a felony in Minnesota. *State v. Griffin,* 336 N.W.2d 519, 525

(Minn.1983). The district court's determination of a defendant's criminal-history score will not be reversed absent an abuse of discretion. *State v. Stillday,* 646 N.W.2d 557, 561 (Minn.App.2002), *review denied* (Minn. Aug. 20, 2002); Minn. Sent. Guidelines cmt. II.B.504 ("It was contemplated that the sentencing court, in its discretion, should make the final determination as to the weight accorded foreign convictions.").

■ Maley argues that the state failed to establish by a fair preponderance of the evidence the facts necessary to apply the 1999 convictions listed on his sentencing worksheet and that the district court therefore abused its discretion by applying those convictions to increase his criminal-history score. The state acknowledges that it did not provide the court with certified copies of the alleged 1999 convictions, but it argues that the district court properly considered those convictions because (1) the supreme court has rejected a requirement that the state present certified copies of out-of-state convictions, (2) Maley did not dispute that he committed the offenses, (3) Maley failed to identify adequately which convictions were in dispute and the nature of the dispute, and (4) Maley waived his right to challenge his criminal-history score by expressly assuming the risk of that score during his plea agreement.

The state accurately identifies the general precedent that the absence of a certified record of an out-of-state conviction does not require exclusion of that conviction per se. But this alone cannot support the district court's application of Maley's California convictions. Although the supreme court has rejected the "absolute requirement" that the state present certified copies of prior convictions, it adopted Minnesota Rule of Evidence 1005 as the "appropriate standard" to document a con-

viction. *Griffin*, 336 N.W.2d at 525. The rule provides:

> The contents of an official record, or of a document authorized to be recorded or filed and actually recorded or filed, including data compilations in any form, if otherwise admissible, may be proved by copy, certified as correct in accordance with rule 902 or testified to be correct by a witness who has compared it with the original. If a copy which complies with the foregoing cannot be obtained by the exercise of reasonable diligence, then other evidence of the contents may be given.

Minn. R. Evid. 1005. Other evidence of the contents of official records may include oral testimony. Minn. R. Evid. 1005 1977 comm. cmt.; *see State v. Jackson*, 358 N.W.2d 681, 683 (Minn.App.1984) (holding a probation officer's statement to the court detailing his search for defendant's foreign felony record to be sufficient under Rule 1005 to support a prior conviction). *Griffin* does not relieve the state of its burden to prove out-of-state convictions by a preponderance of the evidence; rather, it permits the district court to rely on persuasive evidence that sufficiently substitutes for the official, certified record of conviction.

■ This turns us to the implicit question of whether the state proved by a fair preponderance of the evidence that Maley committed the 1999 crimes in California. "Fair preponderance of the evidence means that it must be established by a greater weight of the evidence. It must be of a greater or more convincing effect and ... lead you to believe that it is more likely that the claim ... is true than ... not true." *State v. Wahlberg*, 296 N.W.2d 408, 418 (Minn.1980). Our review of the sentencing record convinces us that the state failed to introduce evidence sufficient to meet this standard. The state's

situation here does not compare favorably with its situation in *Griffin*, when in lieu of a certified record of conviction it presented "considerable documentation" that proved the defendant "had been convicted" of the out-of-state offense. 336 N.W.2d at 525. It also compares unfavorably with the state's position in *Jackson*, when it provided the district court with the in-court "advice and testimony" of the probation officer, who detailed for the court the various documents from federal and state probation and law-enforcement agencies verifying the defendant's arrest, guilty plea, sentence, and his identifying personal information. 358 N.W.2d at 683. The transcripts of proceedings here as they developed in October, November, and December 2004, and January 2005, as well as the documents discussed in them, present no evidence admissible under rule 1005 supporting the existence of the two challenged California convictions. We must therefore reverse the sentence to the extent it relies on these convictions, unless the state's various waiver arguments convince us otherwise. For the reasons that follow, they do not.

■ We see no support for the state's contention that Maley accepted the fact of the convictions and disputed only their impact on the court's sentencing computation. It is true that a sentencing court acts within its discretion when it includes uncertified, but clearly conceded, out-of-state convictions in computing a defendant's criminal-history score. *See State v. Dixon*, 415 N.W.2d 414, 419 (Minn.App. 1987), *review denied* (Minn. Jan. 20, 1988) (affirming sentence after noting that appellant "does not dispute the fact of conviction, but only the failure to provide better documentation of the conviction"); *see also Griffin*, 336 N.W.2d at 525 (observing that "the defendant's attorney on appeal apparently does not *really* dispute the fact that

defendant has a prior conviction"). By contrast here, the transcripts show that Maley consistently requested documents necessary to prove the existence of the convictions, or, as his counsel stated at the December 2004 hearing, "something in writing [and] something to confirm what [Maley] actually was convicted of and sentenced to in these out of state jurisdictions." Maley's counsel had previously contended that there "is a mistake" in the investigation that the court must address, and, noting Maley's challenge to the existence of the convictions, the court indicated—without objection—that it would "presume it's a zero criminal-history score" unless the state could provide adequate proof of the convictions. By challenging the existence of the California convictions, Maley demonstrated no *Dixon* concession.

■ We also are not persuaded by the state's assertion that because Maley failed to more specifically describe his objections, the state could not know precisely which of the convictions he was challenging. The record reflects that the parties and the district court referred universally to "the convictions" in discussing Maley's challenge to his criminal history. In context, the term "the convictions" plainly includes all four convictions alleged on the sentencing worksheet. The district court recognized that Maley's challenge, if unmet, would result in a "zero criminal history score." This supports our conclusion that Maley's challenge was sufficiently understandable to so inform the state. And even if Maley's challenge was unclear, the district court's challenge was not; it obligated the state to respond with certified records (or, implicitly, rule 1005 evidence) proving the existence of all the convictions—thereby resolving any doubt about the scope of Maley's challenge.

■ Finally, we also disagree with the state's contention that Maley's agreement to "bear any risk" of his criminal history constituted an express waiver of his right to challenge the admission of the convictions and the corresponding criminal-history score on his sentencing worksheet. "It is generally possible to forfeit constitutional or statutory rights with a knowing, intelligent, and voluntary waiver." *Ballweber v. State,* 457 N.W.2d 215, 217 (Minn.App.1990); *see also United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993) (stating that "waiver is the intentional relinquishment or abandonment of a known right" (quotation omitted)). But "[w]hether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." *Olano,* 507 U.S. at 733, 113 S.Ct. at 1777. At the pre-sentencing hearing, Maley's counsel stated: "[Maley will] bear any risk as to his criminal-history score. And we believe it will be zero to two, but he bears that risk." Arguing that this statement constitutes a waiver, the state asks that we accept as a matter of law that the statement reflects Maley's express intent to relinquish a known—and waivable—right and his willingness to be sentenced based on whatever criminal history score (factually supported or not) the state might later assert. Neither the record nor controlling case law permits such a conclusion.

First, the statement was made by Maley's attorney and adopted by Maley through general reference only. *Cf.* Minn. R.Crim. P. 26.01 (authorizing a defendant to waive a right to a jury trial "provided the defendant does so personally in writing or orally upon the record in open court"). During a colloquy with Maley, neither the court, nor Maley's attorney, nor even the

state's attorney attempted to establish that Maley understood that the vague reference to "bear[ing] any risk as to his criminal history score" constituted Maley's knowing and intelligent agreement to accept whatever unsubstantiated out-of-state conviction the state might later claim.

Nor does it appear from the record that *the state* understood defense counsel's statement to constitute a waiver of Maley's challenge to his criminal history. The state did not raise the waiver argument before the district court. Instead, the record reflects that after the October hearing, the state acknowledged the existence and validity of Maley's objections to the sentencing worksheet and was attempting—albeit ineffectively—to satisfy those objections by documenting all of the out-of-state convictions. At the November hearing, the state had no objection when Maley asked for a continuance on the ground that Maley had noticed "a mistake on the presentence investigation" and requested the opportunity to "look into that and to address that with the court." The state also did not object at the December hearing when the court accepted Maley's documentation challenge and announced that it would presume a "zero" criminal-history score. Finally, even at the January 2005 sentencing, the state did not assert that the original "bear-any-risk" language constituted Maley's absolute waiver to challenge any out-of-state convictions. The state's argument to the district court was silent as to waiver and consisted only of the following:

> And probation has attempted to request—has made the request for the documents. These are the only documents they have received. It was anticipated that there may be up to two criminal history points at the time of the plea offer in the plea in this matter. I assert to the court that the sentencing worksheets are correct. And I guess I'd just

leave it up to the court's discretion to decide which—to determine the sentencing in this matter.

We cannot conclude on this record that the statement of Maley's counsel constituted a knowing, intelligent, and voluntary waiver of Maley's right to challenge his criminal-history score.

■ Second, even were we to conclude that the statement accurately reflected Maley's knowing intent to relinquish his right to challenge the sentence, it would have no legal effect because a defendant's right to appeal an illegal sentence cannot be waived. *See Ballweber*, 457 N.W.2d at 218 (stating that the "unconditional nature of the statutory right [to appeal any sentence pursuant to Minn.Stat. § 244.11, subd. 1] and the importance of judicial determination of sentences under the Minnesota sentencing scheme precludes us from holding that a defendant in Minnesota may waive the right to appeal from a sentence"); *see also State v. Maurstad*, 706 N.W.2d 545, 549 (Minn.App.2005) ("Because a criminal defendant cannot waive the right to appeal a sentence, we conclude that the postconviction court erred by finding that appellant had waived his right to appeal his criminal history score, a factor in calculating his sentence, because he did not object to the score at trial."). This absolute right to appeal an illegal sentence further indicates that the state's burden to properly substantiate prior convictions does not change based on the perception—erroneous or not—that a defendant will not challenge his criminal-history score.

The alleged convictions are insufficiently documented to augment Maley's sentence. Maley's conduct during the sentencing process did not relax the state's burden to prove his conviction, and, in any event, Maley's right to challenge his sentence

could not be waived. We therefore conclude that the state failed to meet its burden of proof regarding the alleged 1999 California convictions.

## DECISION

The district court abused its discretion by including the challenged and undocumented 1999 convictions when calculating Maley's criminal-history score. It therefore miscalculated Maley's sentence. We reverse and remand for resentencing consistent with this opinion.

**Reversed and remanded.**