*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A22-1785**

State of Minnesota,
Respondent,

vs.

Walter Pierre Thomas,
Appellant.

**Filed April 22, 2024
Affirmed
Frisch, Judge**

Benton County District Court
File No. 05-CR-21-992

Keith Ellison, Attorney General, Lydia Villalva Lijó, Assistant Attorney General, St. Paul, Minnesota; and

Karl Schmidt, Benton County Attorney, Foley, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Leah C. Graf, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Frisch, Presiding Judge; Segal, Chief Judge; and Reilly, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

FRISCH, Judge

Following his conviction for second-degree assault, appellant challenges certain evidentiary rulings by the district court and the inclusion of an out-of-state felony conviction in the calculation of his criminal-history score at sentencing. Because the district court did not abuse its discretion or plainly err in admitting evidence, and the district court did not abuse its discretion in calculating appellant's criminal-history score, we affirm.

**FACTS**

In 2021, respondent State of Minnesota charged appellant Walter Pierre Thomas with seven offenses, six of which were tried: (1) second-degree assault in violation of Minn. Stat. § 609.222, subd. 1 (2020), against M.C., the mother of his children; (2) second-degree assault against his son D.T.; (3) second-degree assault against his son A.C.; (4) threats of violence in violation of Minn. Stat. § 609.713, subd. 1 (2020); (5) domestic assault by strangulation in violation of Minn. Stat. § 609.2247, subd. 2 (2020); and (6) obstructing legal process or arrest in violation of Minn. Stat. § 609.50, subd. 1(2) (2020). Thomas noticed the defense of self-defense. The matter proceeded to trial.

M.C. was the state's first witness at trial. M.C.'s testimony generally established that, over the course of a day or so, Thomas engaged in several physical and verbal altercations with M.C. and their two sons, D.T. and A.C. The altercations included Thomas waiving a knife at them and threatening to kill them, Thomas cutting M.C.'s breast with a knife, and Thomas choking M.C. for a few seconds. M.C. admitted that she could have

caused injuries sustained by Thomas during these altercations, including by burning Thomas with a cigarette and stabbing his hand with a pen. Eventually, M.C. called 911. Following a limiting instruction from the court, M.C. also testified about a 2008 incident during which Thomas choked her.

After the first day of trial, but before M.C. completed her testimony, Thomas objected to the admission of a recorded statement that M.C. made to the police when they responded to the incident on the ground that it was unfairly prejudicial. The state argued that the statement was admissible as "a combination of prior consistent statement and prior inconsistent statement depending on how the rest of testimony goes through. Different pieces have been consistent, and a few have been inconsistent." The district court deferred ruling on the admissibility of M.C.'s recorded statement until after her testimony.

During the state's examination of M.C., the state used a transcript of M.C.'s recorded statement to refresh her recollection. During cross-examination of M.C., Thomas's counsel used the statement to impeach M.C.

Following M.C.'s testimony, the state confirmed that it planned to offer M.C.'s recorded statement with portions redacted and argued that the content of the recorded statement was admissible as either a prior consistent or prior inconsistent statement. Thomas objected, arguing that M.C.'s recorded statement did not amount to a prior consistent statement due to inconsistencies between M.C.'s testimony and the recorded statement, the statement referenced a prior bad act related to a gun, and the statement was overly cumulative and prejudicial. The district court ordered the state to make certain

redactions from M.C.'s recorded statement relating to Thomas having or using a gun. The district court then stated:

> In other respects, in reviewing the transcript, it appears that the bulk of it is consistent with [M.C.'s] statement in court here today. And I think it would be helpful to the trier of fact to be able to review and hear that statement and compare that to her testimony.
>
> So my inclination, then, is to allow the statement to be presented with those redactions as we've cited on the record. And, since there is a reference to a 634.20 incident within the statement, I will again repeat my cautionary instruction before we play the audio for the jury.

Thomas renewed his objection when the state offered the recording during the testimony of the officer who took the statement. The district court admitted the statement, finding it admissible as a prior statement by a witness and under the residual hearsay rule. The district court then permitted the state to play the recorded statement. The state later offered as an exhibit a recorded statement Thomas made to police when police responded to the incident. Thomas did not object to this evidence, and the district court admitted the statement.

The jury found Thomas guilty of second-degree assault against M.C., threats of violence, and domestic assault by strangulation, and not guilty of the remaining charges. The district court convicted Thomas of second-degree assault and sentenced him to 33 months' imprisonment, a guidelines sentence based on a severity level of six and two criminal-history points. Minn. Sent'g Guidelines 4.A (2020). Thomas's criminal-history score was based on out-of-state convictions.

Thomas appealed and then moved this court to stay the appeal to pursue postconviction relief to correct his criminal-history score. We granted the stay.

Thomas moved the district court to correct his sentence, arguing that the district court should not have included Indiana convictions in calculating his criminal-history score, including a 2016 conviction for strangulation. In response, the state filed a judge-executed domestic-violence determination, criminal information and affidavit of probable cause for seven charges, an abstract of judgment, and documents related to revocation of probation in support of its assertion that Thomas's 2016 conviction for strangulation should be compared to domestic assault by strangulation in Minnesota and count for one criminal-history point.

The district court determined that the state produced sufficient evidence of the 2016 Indiana strangulation conviction and that the offense was the equivalent of domestic assault by strangulation in Minnesota and was therefore properly included in calculating Thomas's criminal-history score. But the district court determined that an Indiana misdemeanor offense was not properly included in Thomas's criminal-history score, lowered his score to one, and re-sentenced him to 27 months' imprisonment.

We reinstated Thomas's appeal.

**DECISION**

Thomas challenges the district court's admission of M.C.'s recorded statement and his own recorded statement at trial and the inclusion of the 2016 Indiana strangulation conviction in the amended calculation of his criminal-history score. We address each argument in turn.

5

**I.     There is no reasonable likelihood that the admission of M.C.'s out-of-court statements significantly affected the verdict.**

Thomas argues that the district court abused its discretion by admitting certain statements made in an audio recording of M.C. taken on the same day as the charged incident. Thomas specifically challenges the admissibility of eight statements in the police recording with M.C.:

> (1) Thomas had sent M.C. text messages during the week and a half before the June 8 incident in which he threatened to kill her and said she was "out here f---in' everybody . . . because [she] won't have sex with him"; (2) their conflict was about "f---n', f---in' f---in' . . . give him some"; (3) that sex is "all" Thomas "talks about" and that before the incident he said she "better give him some" and "better f--k him"; (4) M.C. was "the only one tak[ing] care of" the children and that she had "no help" or "support"; (5) M.C. "had been through stuff with [Thomas] and [her] boys before," that her sons grew up with violence "all they life," and that she called police on Thomas in Gary, Indiana "[f]or [her] son"; (6) M.C. had tried to get Thomas "some help" and that Thomas "needs . . . some mental help"; (7) M.C. was trying to "save" her daughter by "break[ing] the cycles" and did not want her daughter to "end up like" her; and (8) M.C. was not sure if Thomas had been "doin' drugs" on June 8, 2021 but that he's "came around" after he "smoked it," and that his behavior on the offense date was "worse than that."

Thomas argues that these statements were inadmissible hearsay.

We begin by noting that our task is complicated by the fact that the record of evidentiary objections at trial is unclear. Before the district court, defense counsel did not specify with precision the objectionable portions of M.C.'s statement, and the district court did not specify with precision the applicability of exceptions to the hearsay rule with respect to any particular statement. *See State v. Vasquez*, 912 N.W.2d 642, 649 (Minn.

6

2018) (citing *State v. Rossberg*, 851 N.W.2d 609, 617-18 (Minn. 2014)) ("A defendant's objection to the admission of evidence preserves review only for the stated basis for the objection or a basis apparent from the context of the objection."). And, before the recording was admitted as substantive evidence, defense counsel used M.C.'s recorded statement to impeach her on cross-examination. We assume for purposes of this appeal that Thomas objected to the eight categories of statements set forth above as inadmissible hearsay.

"We review a district court's evidentiary ruling on hearsay for an abuse of discretion." *State v. Vangrevenhof*, 941 N.W.2d 730, 736 (Minn. 2020). "A district court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Id.* (quotation omitted). "A defendant claiming error in the district court's reception of evidence has the burden of showing both the error and the prejudice resulting from the error." *Id.* (quotation omitted).

Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Minn. R. Evid. 801(c). Hearsay is only admissible as provided by the rules of evidence or by other rules not relevant here. Minn. R. Evid. 802. A statement is not hearsay if (1) the declarant testifies at trial, (2) the declarant "is subject to cross-examination concerning the statement," (3) the statement is "consistent with the declarant's testimony," and (4) the statement is "helpful to the trier of fact in evaluating the declarant's credibility as a witness." Minn. R. Evid. 801(d)(1). "[A]ssertions about events that have not been described by the witness in trial testimony" are not admissible under this rule because they

7

are not helpful to the trier of fact. *State v. Bakken*, 604 N.W.2d 106, 109 (Minn. App. 2000) (quotation omitted), *rev. denied* (Minn. Feb. 24, 2000).

The admission of a statement "that is reasonably consistent with the trial testimony is not reversible error." *State v. Zulu*, 706 N.W.2d 919, 924 (Minn. App. 2005) (quotation omitted). But a statement is not reasonably consistent such that it is a prior consistent statement when "inconsistencies directly affect the elements of the criminal charge." *Bakken*, 604 N.W.2d at 110. To determine whether statements are reasonably consistent, a district court must compare individual statements to determine their consistency, otherwise "a few consistent statements in a multi-statement interview may be used to bootstrap into evidence inconsistent statements that do not qualify under the rule." *Id.* at 109.

We conclude from our comparison of M.C.'s trial testimony and recorded statement that certain of M.C.'s statements regarding the nature of her relationship with Thomas, including conflict between Thomas and M.C. and their sons prior to the charged incident, were reasonably consistent. But the remainder of M.C.'s recorded statement identified by Thomas on appeal—that M.C. was the only person taking care of their children, that Thomas had tried to receive mental-health help in the past, that M.C. was trying to "break the cycle," and that M.C. was unsure if Thomas had been using illicit substances on the day of the incident but was aware that Thomas had used them before—is not reasonably consistent with her trial testimony and was therefore not admissible as a prior consistent

8

statement.[1]  *See id.* (concluding that the district court improperly admitted portions of a recorded statement inconsistent with testimony).

Our conclusion that the identified statements are inadmissible hearsay does not end our analysis because Thomas has not shown a reasonable likelihood that the erroneous admission of these statements significantly affected the verdict.  *See State v. Matthews*, 800 N.W.2d 629, 633 (Minn. 2011) ("Under the harmless error standard, a defendant who alleges an error that does not implicate a constitutional right must prove there is a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict." (quotation omitted)).  We are not persuaded that the state's references in closing argument to the statement and M.C.'s credibility, the volume and nature of the inadmissible hearsay, the manner of presentation, and the strength of the evidence at trial were such that there was a reasonable likelihood that the erroneously admitted statements had a significant effect on the verdict.  The record shows that Thomas highlighted the inconsistencies between M.C.'s testimony and her statement by using the statement to undermine her credibility at trial.  And the hearsay statements were made in a recording totaling approximately 40 minutes and were not referenced again during trial.  We therefore affirm Thomas's convictions because the erroneous admission of evidence did not significantly affect the verdict.

---

[1] In admitting M.C.'s statement, the district court also summarily ruled the statement was admissible under Minn. R. Evid. 807, also known as the residual hearsay exception. Thomas challenges the admissibility of M.C.'s statement under this exception.  We decline to resolve whether these statements may have been admissible under the residual exception to the hearsay rule because the district court conducted *no analysis* as to the admissibility of the statements under that exception.

## II. The district court did not plainly err in admitting Thomas's out-of-court statements.

Thomas next argues that the district court plainly erred by admitting a recording of Thomas's statement made shortly after his arrest because the statement contained prejudicial indications that he was familiar with police. Thomas did not object to this evidence at trial, so we review the admission of his recorded statement for plain error. *Vasquez*, 912 N.W.2d at 650. To show plain error, a defendant must demonstrate that "(1) there was an error, (2) the error was plain, and (3) the error affected the defendant's substantial rights." *Id.* (quotation omitted). On appeal, we "correct the error *only* when it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Pulczinski v. State*, 972 N.W.2d 347, 356 (Minn. 2022).

Assuming that the admission of Thomas's statement was plainly erroneous, we do not conclude that such error affected Thomas's substantial rights. *Matthews*, 800 N.W.2d at 634 (explaining that the analysis of whether a plain error affected a defendant's substantial rights is equivalent to harmless-error analysis, such that "[a] plain error affects the substantial rights of the defendant when there is a reasonable likelihood that the error substantially affected the verdict" (quotation omitted)). First, the statement did not unequivocally suggest that Thomas had knowledge of his rights and of criminal investigations *because* he has a prior criminal history. Second, the admission of Thomas's recorded statement permitted him to share in his own words—without testifying at trial—his version of the incident, including M.C.'s conduct resulting in harm to him. Third, the statement further highlighted inconsistencies in the testimony describing the events

10

surrounding the incident. Under these circumstances, we conclude that any error by the district court in admitting Thomas's statement did not affect his substantial rights.

And even if Thomas's own statement affected his substantial rights, we cannot conclude that the admission of the statement seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Pulczinski*, 972 N.W.2d at 356. Thomas argues that his statement suggested to the jury that he was "arrested for assaultive conduct on many prior occasions" and therefore the verdict "raises doubt about the jury's ability to fairly resolve the case before it, including with respect to whether Thomas acted in self-defense." Again, we note that Thomas's statement did not conclusively establish that he had a prior history of assaultive conduct and benefited Thomas by allowing the jury to hear his explanation as to what happened, including how he acted in self-defense.

We therefore conclude that the district court did not commit reversible error by admitting Thomas's recorded statement.

## III. The district court did not abuse its discretion in calculating Thomas's criminal-history score.

Thomas argues that the district court erred in calculating his criminal-history score on remand because it included a 2016 Indiana strangulation conviction and the state did not meet its burden to prove that conviction was equivalent to domestic assault by strangulation in Minnesota. We disagree.

A district court must use an accurate criminal-history score to determine the presumptive sentence under the sentencing guidelines. *State v. Maurstad*, 733 N.W.2d 141, 147 (Minn. 2007). Thus, any sentence based on an incorrect criminal-history score is

11

an illegal sentence that can be corrected at any time. *Id.* When a defendant is sentenced based on an incorrect criminal-history score, the district court must resentence the defendant. *State v. Provost*, 901 N.W.2d 199, 202 (Minn. App. 2017).

"The [sentencing] guidelines direct that out-of-state felony convictions be included in a defendant's criminal-history score." *State v. Maley*, 714 N.W.2d 708, 711 (Minn. App. 2006); *see also* Minn. Sent'g Guidelines 2.B.5 (2020) (providing the district court with a procedure for counting out-of-state convictions). "The state must establish by a fair preponderance of the evidence that the prior conviction was valid, the defendant was the person involved, and the crime would constitute a felony in Minnesota." *Maley*, 714 N.W.2d at 711. We review a district court's determination of a defendant's criminal-history score for an abuse of discretion. *Id.*

An out-of-state conviction "may be counted as a felony [in a criminal-history score] only if it would both be defined as a felony in Minnesota, and the offender received a sentence that in Minnesota would be a felony-level sentence." Minn. Sent'g Guidelines 2.B.5.b (emphasis omitted). To determine whether an out-of-state conviction should be included in a defendant's criminal-history score, the sentencing court should compare the definition of the out-of-state offense with the definitions of comparable Minnesota offenses but may also consider the nature of the out-of-state offense and the sentence the offender received. *Hill v. State*, 483 N.W.2d 57, 61 (Minn. 1992). "The offense definitions in effect when the current Minnesota offense was committed govern the designation of non-Minnesota convictions as felonies." Minn. Sent'g Guidelines 2.B.5.b.

12

The state submitted evidence to the district court to prove that Thomas was convicted of strangulation in Indiana. Those documents included a domestic-violence determination, criminal information (complaints) for seven different charges, affidavits of probable cause for each charge, an "abstract of judgment" listing the charges to which Thomas pleaded guilty, dismissed charges, and sentencing information, and documents related to a subsequent probation revocation. Although Thomas asked the district court not to consider the state's late submission, Thomas did not otherwise object to the district court's consideration of any of this evidence.

The district court exercised its discretion to consider the documents and concluded that these documents established the validity of Thomas's 2016 Indiana strangulation conviction and that the crime was equivalent to a felony in Minnesota by a fair preponderance of the evidence. The district court specifically noted the contents of the affidavit of probable cause, "[a]ssociated certified documents" discussing other charges arising from the same incident, the domestic-violence determination, and the abstract of judgment. The district court concluded, and we agree, that a fair reading of these documents shows that Thomas was charged with, and pleaded guilty to, a strangulation charge based on an allegation that he "grabbed [the victim] by her neck and lifted her up against a wall" which impeded her normal breathing or blood circulation and that he received a sentence of 912 days' imprisonment. The documents also show that the victim of the strangulation "is or was the spouse of" Thomas. And the Indiana court issued a domestic-violence determination as part of sentencing. *See* Ind. Code § 35-38-1-7.7 (2020) (providing that a domestic-violence determination "must be based upon . . . evidence

13

introduced at trial" or "a factual basis provided as part of a guilty plea"). On this record, the district court did not abuse its discretion by determining that the state had proven the 2016 Indiana strangulation conviction by a fair preponderance of the evidence. *Compare* Ind. Code §§ 35-42-2-9(b) (defining strangulation), 35-31.5-2-78 (defining crime of domestic violence), 35-31.5-2-128 (defining family or household member) (2020), *with* Minn. Stat. §§ 609.2247 (defining domestic assault by strangulation), 518B.01, subd. 2(b) (defining family or household members) (2020).

Thomas argues that these documents are insufficient to prove the validity of the conviction because they are simply allegations and do not necessarily establish that the factual basis of Thomas's plea was consistent with the allegations. In effect, Thomas argues that the state was obligated to produce a transcript of his testimony at the plea hearing to confirm that the Indiana conviction was equivalent to a felony in Minnesota to satisfy its burden. But Minnesota law does not impose such a requirement on the state to prove the validity of an out-of-state conviction. *State v. Griffin*, 336 N.W.2d 519, 525 (Minn. 1983) (explaining that the state may prove the conviction by a copy of the conviction "certified as correct in accordance with Rule 902 or testified to be correct by a witness who has compared it with the original" or, if such a copy "cannot be obtained by the exercise of reasonable diligence, then other evidence of the contents may be given"); *Maley*, 714 N.W.2d at 712 (explaining that the district court may "rely on persuasive evidence that sufficiently substitutes for the official, certified record of conviction"). And we decline to impose such a requirement here because defendants with prior foreign or out-of-state convictions must "have their criminal history scores computed according to

14

the same basic standards" as with Minnesota prior convictions and a "mini-trial" is not required in every case. *Hill*, 483 N.W.2d at 61.

Thomas also argues that the state was required to specify to the district court the elements of both the foreign conviction and the comparable Minnesota crime. But Thomas cites no authority for the proposition that the state is required to do so to meet its burden. *See Braylock v. Jesson*, 819 N.W.2d 585, 590 (Minn. 2012) (describing the difference between a burden of production and a burden of persuasion); *State v. Jackson*, 358 N.W.2d 681, 683 (Minn. App. 1984) (stating that the state must establish the validity of a prior conviction "by a fair preponderance of the evidence"). It is ultimately the district court's responsibility to determine whether an out-of-state conviction must be included in calculating a defendant's criminal-history score. Minn. Sent'g Guidelines 2.B.5 ("The court must make the final determination as to whether and how a prior non-Minnesota conviction should be counted in the criminal history score."). We therefore decline to impose additional obligations upon the state in satisfying its burden to prove an out-of-state conviction.

**Affirmed.**