**STATE of Minnesota, Respondent,**

v.

**Carl R. McGEE, Appellant.**

**No. CO–83–529.**

Supreme Court of Minnesota.

April 27, 1984.

William Kennedy, Hennepin County Public Defender, James P. Reynolds, Asst. Public Defender, Minneapolis, for appellant.

Thomas Johnson, Hennepin County Atty., Vern Bergstrom, Asst. County Atty., Minneapolis, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Janet Anderson, Sp. Asst. Atty. Gen., St. Paul, amicus curiae.

C. Paul Jones, Public Defender, Minneapolis, amicus curiae.

Tom Foley, Ramsey County Atty., Steven C. Decoster, Asst. County Atty., St. Paul, amicus curiae.

AMDAHL, Chief Justice.

This is an appeal by a defendant convicted, after jury trial, of criminal negligence

resulting in death, Minn.Stat. § 609.21 (1982), from a sentence imposed by the trial court. The trial court computed defendant's criminal history score as being five. The presumptive sentence for the offense in question, a severity level V offense, by a person with a criminal history score of five is 46 (43–49) months executed. The trial court sentenced the defendant to 60 months executed, the statutory maximum. We remand for resentencing.

The complaint stated that a police investigation revealed that on March 31, 1982, the victim, a 55-year-old woman, was walking in the crosswalk across 35th Street at Park Avenue in Minneapolis with a green light when defendant, driving a van, struck her. At the time of impact defendant was driving at an excessive rate of speed in the wrong direction on Park, which is a one-way street, and was running a red light. After hitting the victim, defendant kept driving. Two witnesses followed defendant for a few blocks, and he stopped momentarily. One of the witnesses got out and approached him and told him not to flee. Defendant, who appeared to the witness to be drunk, ignored her remarks and drove off. The victim died at the scene. Police found defendant's van on April 1 and towed and searched it. Defendant was arrested later on April 1. At his trial defendant claimed that another person was the driver of the van. The jury did not believe him and found him guilty of the charge on December 20, 1982.

Defendant is 56 years old. As an adult defendant was incarcerated for all but 3 years during the period 1946 to October of 1972. His adult felony convictions were:

| YEAR | OFFENSE | SENTENCE DISCHARGE OR EXPIRATION |
| --- | --- | --- |
| 1947 | Burglary | 7–22–53 |
| 1953 | Burglary | 5–18–55 |
| 1955 | Burglary | 9–30–65 |
| 1960 | Robbery | 1–18–79 |
| 1969 | Forgery | 1–18–79 |

On October 17, 1972, he was released from prison and placed on parole until August 2016. He was granted an early discharge from sentence on January 1, 1979. Defendant has a serious traffic record in addition to the felony record. He was convicted of DWI in April of 1975 and in June of 1976. In July of 1977 he was convicted of an aggravated driving offense.

Defendant in his original brief on appeal argued that his criminal history score should have been zero, not five, and that he therefore should have been given an 18-month stayed sentence, which is the presumptive sentence obtained using the zero criminal history column. He also argued that there were no grounds justifying a durational departure.

Defendant's contention that his criminal history score should have been zero rather than five was based on Minnesota Sentencing Guidelines and Commentary, II.B.1.e. and II.B.106. (1981). The 1981 version of II.B.1.e. provided:

Prior felony sentences will not be used in computing the criminal history score after a period of ten years has elapsed since the date of discharge from or expiration of the sentence, provided that during the period the individual had not received a felony, gross misdemeanor, or misdemeanor sentence.

The 1981 version of II.B.106. provided:

Finally, the Commission established a "decay factor" for the consideration of prior felony offenses in computing criminal history scores. The Commission decided it was important to consider not just the total number of felony sentences, but also the time interval between those sentences. A person who was sentenced for three felonies within a five-year period is more culpable than one sentenced for three felonies within a twenty-year period. The Commission decided that after a significant period of conviction-free living, the presence of old felony sentences should not be considered in computing criminal history scores. Prior felony sentences would not be counted in criminal history score computation if ten years had elapsed since the date of discharge from or expiration of the sentence, provided that during the ten-year period, the individual was not sentenced for a felony, gross misdemeanor, or misdemeanor. (Traffic offenses

are excluded in computing the decay factor.) It is the Commission's intent that time spent in confinement pursuant to an executed or stayed criminal sentence not be counted in the computation of the conviction-free period.

■ Because defendant took an all-or-nothing approach in his brief on appeal, we focused our attention on the issue of whether the 10-year decay period had run following defendant's last conviction. Under both the 1981 version and the 1982 version of II.B.1.e. the 10-year period begins to run from the date of "discharge from or expiration of the [defendant's prior] sentence." Defendant was discharged from prison in connection with his last prior felony convictions on October 17, 1972, but defendant was not discharged from parole until 1979. This being so, it was clear that there was no merit to defendant's contention that all his prior convictions had decayed and that his criminal history score should have been zero instead of five. Our opinion, filed on September 16, 1983, therefore rejected defendant's contention.

Thereafter, defendant filed a petition for rehearing in which he argues for the first time that his criminal history score should have been two rather than five. Specifically, he argues that it is correct to start the 10-year period at the date of discharge from sentence for the purpose of determining whether the convictions underlying those sentences had decayed, but he argues that a different 10-year period applies with respect to all other prior convictions. That is, he agrees (a) that two of his prior convictions, a 1960 conviction and a 1969 conviction, had not decayed because the 10-year period in connection with those did not start to run until he was discharged from the sentences for those offenses in 1979 but asserts (b) that the 10-year period for all prior convictions started in 1972 when he was released on parole and that between October of 1972 and October of 1982 he had no "convictions," and that therefore under the 1981 version of II.B.1.e. those convictions decayed. This argument is based on the language of the comment to the effect that "It is the Commission's in-

tent that time spent in confinement pursuant to an executed or stayed criminal sentence not be counted in the computation of the conviction-free period." Defendant argues that the commission would not have used this language unless it intended that the defendant's interpretation be followed.

The Attorney General and the County Attorney for Ramsey County have filed briefs taking issue with this interpretation and the Hennepin County Attorney has adopted the Attorney General's brief as its own brief on this issue. The State Public Defender has also filed an amicus brief.

■ We do not have any difficulty with the general notion that some but not all of a defendant's prior convictions can be deemed to have decayed for purposes of computing his criminal history score. Thus, if a defendant was convicted in 1940 and discharged from sentence in 1945, and if he then went 10 years without committing another offense that led to a conviction and sentence, the 1940 conviction cannot be used later. Stated differently, once a conviction has decayed, it is always decayed.

■ The issue raised by defendant is a more difficult one. We start with the proposition that the argument is not necessarily inconsistent with the language of the section and comment. The language used is "after a period of 10 years has elapsed since the date of discharge from or expiration of the sentence," the word "sentence" being in the singular. This suggests that each prior conviction should be considered separately and if there is a 10-year "conviction-free" period following the defendant's release from any of the sentences for his prior convictions, then those prior convictions should be deemed to have decayed. In this connection, there may be some merit to the argument that if the last sentence of the comment is to have any meaning, this interpretation must be accepted. In any event, even if the provision is ambiguous, defendant's interpretation should be accepted on the principles (a) that ambiguities should be resolved against the state and in the defendant's favor and (b) that

commission policy and official commission interpretation should be looked to in resolving ambiguities of this sort.

■ Whether defendant should benefit from his interpretation of the provision depends upon the validity of his contention that under the 1981 version only a conviction can interrupt the 10-year period. As in *State v. Morse*, 347 N.W.2d 807 (Minn., 1984), we hold that under the 1981 version the 10-year decay clock is stopped only by a conviction occurring within the 10-year period.

The only remaining issue is whether there were grounds for a durational departure. We hold that there were.

■ The trial court's basic reason for departing was the court's belief that defendant's conduct was significantly more serious than the typical conduct underlying the offense of criminal negligence resulting in death. We have affirmed convictions of criminal negligence even in cases where the defendant was not intoxicated or under the influence of alcohol. *See, e.g., State v. Southern*, 304 N.W.2d 329 (Minn.1981) (upholding conviction based on evidence that defendant's accelerating and leaving the scene, which resulted in victim being dragged, was a substantial factor causing the victim's death), and *State v. Boldra*, 292 Minn. 491, 195 N.W.2d 578 (1972) (upholding conviction of driver who was not drunk at the time but who tried to beat a stop sign and drive through an intersection at 50-miles-per-hour). While a defendant's intoxication alone does not justify a conviction of criminal negligence, *State v. Hansen*, 296 Minn. 42, 206 N.W.2d 352 (1973), the typical case does involve, among other things, a driver who was intoxicated. We agree with the trial court that the conduct of defendant in this case was significantly more serious in degree than that of a typical criminally negligent driver. Defendant was not just drunk but apparently was extremely drunk. Also, just as a second DWI conviction is now considered an aggravated violation, we believe that defendant's prior convictions of DWI bear on an evaluation of his conduct and render his conduct more serious. Defendant was driving in an area where he presumably knew that there might be pedestrians. Some people who are intoxicated drive more slowly in the hope of avoiding an accident and avoiding hurting someone. Defendant was driving at an excessive rate of speed. Not only that, but he was driving the wrong way on a one-way street and he drove through a red light. The victim had a right to rely on the green light permitting her to use the crosswalk. Even assuming that she was looking for traffic she might not have seen defendant because he was going the wrong way. Instead of stopping, defendant drove on. When the witnesses followed him and warned him to stop, he stopped only momentarily, then drove off.[1] In short, we believe that defendant's conduct was more serious and more culpable than that underlying a typical criminal negligence conviction.

On remand, the trial court, if it chooses, may depart both dispositionally and durationally and, under *State v. Evans*, 311 N.W.2d 481 (Minn.1981), impose a sentence of up to 54 months executed (double the newly computed correct presumptive sentence duration of 27 months).

Remanded for resentencing.

---

1. The trial court also relied on defendant's lack of remorse. Generally, lack of remorse should not be a factor justifying a durational departure or one with respect to consecutive sentencing. *State v. Schmit*, 329 N.W.2d 56, 58 n. 1 (1983). However, there may be cases in which the defendant's lack of remorse could relate back and be considered as evidence bearing on a determination of the cruelty or seriousness of the conduct on which the conviction was based. Further, there may be cases where a defendant's lack of remorse is evidence which would be relevant to a determination of the defendant's amenability or unamenability to probation.