STATE of Minnesota, Appellant,

v.

Daniel Leslie MAURSTAD, Respondent.

No. A04–1000.

Supreme Court of Minnesota.

June 14, 2007.

Greg Widseth, Polk County Attorney, Scott A. Buhler, Assistant Polk County Attorney, Crookston, MN, for Appellant.

Daniel Leslie Maurstad, St. Paul, MN, pro se.

## OPINION

ANDERSON, PAUL H., Justice.

Daniel Maurstad received a 129–month sentence after pleading guilty to three offenses under a plea agreement. When Maurstad negotiated the plea agreement, both he and the state assumed he would have a two-point criminal history score, which would yield a 110–month presumptive sentence. But the presentence investigation identified a prior felony conviction and corresponding probationary sentence that the parties had not taken into account. The district court then assigned two additional criminal history points—one point for the prior felony conviction and one point for custody status. After sentencing, Maurstad petitioned for postconviction relief on the ground that he should not have been assigned the custody status point. He asked to be resentenced with a three-point criminal history score, which would reduce his sentence by a minimum of two months. The court denied relief, finding that Maurstad had waived or forfeited review by failing to object at sentencing.

The Minnesota Court of Appeals reversed and remanded for resentencing. The court of appeals concluded that Maurstad did not waive his right to appeal, that he was not required to show plain error in order to obtain appellate review, and that the district court erred by assigning the custody status point. The state petitioned for review of the following issues: (1) whether a defendant can waive or forfeit review of a criminal history score calculation; and (2) whether a custody status point may be assigned for offenses a defendant committed after discharge from an indeterminate probationary term. We affirm the court of appeals.

In July 2003, respondent Daniel Maurstad was charged in Polk County with one count of first-degree controlled substance crime (manufacturing methamphetamine) and one count of conspiracy to manufacture methamphetamine. Ten weeks later, the state amended its complaint, adding two counts of first-degree controlled substance crime (possessing methamphetamine and possessing with intent to sell methamphetamine) and one count of failure to affix the appropriate tax stamps, labels, or other required indicia to methamphetamine. Three weeks after amending its first complaint, the state filed a separate complaint against Maurstad, alleging one count of second-degree controlled substance crime (selling methamphetamine). Six weeks later, the state again amended its first complaint, adding two assault counts.

One day before Maurstad was to go on trial for the seven counts listed in the amended complaint, his counsel moved the district court for a continuance and to permit his withdrawal as counsel. At a hearing on the motions, defense counsel stated that he and Maurstad had not been able to communicate effectively and to plan a defense. Counsel also stated that the state's "numerous amendments" to its complaint had complicated efforts to prepare for trial and that he had not yet had a chance to talk with Maurstad about the recently-added assault charges. The court denied both motions, noting that the trial had already been postponed two or three times.

The following day, Maurstad entered three guilty pleas under a plea agreement resolving all pending charges. He pleaded guilty to one first-degree controlled substance crime, the second-degree controlled substance crime, and one misdemeanor assault. The state agreed to dismiss the remaining five counts against Maurstad. At the plea hearing, the state said Maurstad would

> be sentenced according to the Minnesota sentencing guidelines. We believe this will result in a presumptive commitment to prison *for 110 months.* All sentences will be imposed concurrent to one another.

(Emphasis added.) After the state recited several other terms of the plea agreement, the court asked defense counsel if the state's understanding of the plea agreement was defense counsel's understanding as well. Defense counsel replied that it was. At the end of the hearing, the court ordered a presentence investigation (PSI) report and set a sentencing date.

A corrections agent prepared and filed Maurstad's PSI report. The report listed two prior convictions relevant to the determination of Maurstad's criminal history score: a 1996 Marshall County conviction for third-degree burglary, and a 1996 Pennington County conviction for aiding burglary in the second degree. The agent assigned Maurstad four criminal history points—one point each for the Marshall County and Pennington County convictions, one point for "custody status," and one point under *Hernandez* for Maurstad's

second-degree controlled substance offense.[1] The agent assigned the custody status point after concluding that the second-degree controlled substance offense occurred within the original term of probation that Maurstad received for the Pennington County conviction.

Neither the state nor defense counsel was aware of the Pennington County conviction before Maurstad's PSI report was completed. Therefore, when the parties negotiated the plea agreement, they had anticipated that Maurstad would have two criminal history points, not four. With four criminal history points, the presumptive duration of Maurstad's governing sentence increased from the 110 months contemplated in the plea agreement to 134 months.

Defense counsel did not raise any objection to the PSI report or sentencing worksheets before the sentencing hearing. At the beginning of the hearing, the district court asked defense counsel if there was a need for a hearing on the factual content of the PSI report. Counsel responded that he did not anticipate Maurstad's criminal history score would be as high as it was. But counsel stated,

I do believe that our plea agreement * * * contemplated that there were no representations made as to what the criminal history points might ultimately be. So, I really don't know that ethically [Maurstad] can contest any of those points, just note that it wasn't anticipated that it would be that high.

After the state asked the district court to impose the presumptive guideline sentences concurrent to one another, the court asked whether defense counsel wished to comment. Defense counsel stated,

[A]gain I'd like to note for the Court that we originally believed [Maurstad] was looking at a presumptive commit for 110 months on Controlled Substance Crime in the First Degree. I know that we had a plea agreement and, because of that, I really don't have the ability to argue for something against the bargain that was struck. So, I guess I really can't contest the imposition of the guideline sentence here.

Shortly thereafter, the state indicated that it would not object to the court imposing a sentence at the low end of the guidelines range—129 months rather than 134—for the first-degree controlled substance offense, which was the offense that governed the sentence.

Based on a four-point criminal history score, the district court imposed a 129-month sentence. Maurstad appealed this sentence to the court of appeals. He later moved to stay his appeal so he could pursue postconviction relief, and the court of appeals granted this motion. Maurstad then petitioned for postconviction relief, asking to be resentenced with the correct criminal history score. Maurstad argued that he should not have received a custody status point because he was not under "any form" of criminal justice system custody at the time he committed the current offenses.[2]

The record shows that Maurstad was sentenced by the Pennington County court

---

1. Under the *Hernandez* method of sentencing, the defendant's criminal history score includes points for prior convictions as well as a point(s) for all but the last of the current felony offenses for which the court is imposing concurrent sentences. *State v. Hernandez,* 311 N.W.2d 478, 480–81 (Minn.1981).

2. Under Minnesota Sentencing Guidelines II. B.2.c, an offender receives a custody status point if he offends "within the period of the initial length of stay pronounced by the sentencing judge for a prior felony, gross misdemeanor or an extended jurisdiction juvenile conviction."

in February 1996. At the sentencing hearing, the court noted that aiding and abetting burglary in the second degree carried a maximum statutory penalty of 10 years in prison, a $20,000 fine, or both. The court then stated, "it is hereby ordered that the imposition of the sentence is stayed and you [Maurstad] will be placed on supervised probation * * * for a period not to exceed the statutory maximum." Forty-five months later, in November 1999, the same court issued an order discharging Maurstad from probation for this conviction. Maurstad argued to the postconviction court that the Pennington County court had placed him on probation for a period *not to exceed* the statutory maximum of 10 years, which is different from placing him on probation *for* 10 years. He asserted that when he was discharged from probation in 1999, his probationary term and the "initial length of stay" imposed for the Pennington County conviction were over.

The state responded by asserting that Maurstad waived his right to challenge his criminal history score by "specifically agree[ing] with the information set forth in the presentence investigation report and the sentencing guidelines worksheets." The state further asserted that at a minimum, Maurstad forfeited postconviction review by failing to voice any objection to the PSI report or sentencing worksheets at or before sentencing, and therefore had to prove plain error—a standard Maurstad had not tried to meet.

The postconviction court denied Maurstad's petition for relief after declining to review his criminal history score calculation. The court found that because Maur-

stad did not object to the PSI report or sentencing worksheets at the time of sentencing, he waived or, at a minimum, forfeited his right to request postconviction relief on the basis of his criminal history score calculation.

Maurstad appealed to the court of appeals, arguing that the district court erred when it assigned him a custody status point as a consequence of his Pennington County conviction.[3] The state responded that the court of appeals should refuse to consider Maurstad's criminal history score claim on the same procedural grounds the state raised before the postconviction court. As to the merits of Maurstad's claim, the state argued that the sentencing guidelines are unambiguous and require assignment of a criminal history score custody status point because Maurstad committed the offenses for which he was sentenced within the 10–year probationary term imposed for the Pennington County conviction.

The court of appeals held that Maurstad had not waived his right to appeal the criminal history score calculation because a court may correct an "illegal sentence" at any time, and a defendant cannot waive the right to appeal an illegal sentence. *State v. Maurstad,* 706 N.W.2d 545, 549 (Minn.App.2005). The court also declined to apply plain-error analysis to "unobjected-to errors in sentencing"—i.e., Maurstad's criminal history score calculation—on the ground that a defendant has an "unwaivable statutory right" to appeal his sentence. *Id.* Finally, the court concluded that Maurstad was not under any form of custody when he committed the current

---

3. Maurstad also argued to the court of appeals that the district court violated his constitutional right to a jury trial under *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), by assigning him a custody status point on facts found by the

court. The court of appeals rejected this argument on the basis of its previous decision in *State v. Brooks,* 690 N.W.2d 160, 163–64 (Minn.App.2004), *rev. denied* (Minn. Dec. 13, 2005). *State v. Maurstad,* 706 N.W.2d 545, 551 (Minn.App.2005).

offenses, and therefore, held that the district court erred when it assigned a custody status point. *Id.* at 549–50.

The state petitioned for review of the court of appeals' rulings on (1) whether a defendant can waive or forfeit review of a criminal history score calculation; and (2) whether a custody status point may be assigned when a court sentences a defendant upon conviction for an offense committed after discharge from an indeterminate probationary term.

## I.

The state argues that Maurstad waived review of any issues relating to sentencing when he "specifically asked the district court to impose" the recommended sentences in the PSI report and sentencing guidelines worksheets. The state argues in the alternative that Maurstad forfeited review of sentencing issues by failing to object to the report or worksheets at or before sentencing, and therefore must prove plain error in order to obtain review. Maurstad asserts that the state's arguments are altogether inapplicable because a sentence based on an erroneous criminal score is an illegal sentence, and a defendant cannot waive or forfeit review of an illegal sentence. We first address the state's waiver argument.

■ When a defendant has initially filed a direct appeal and then moved for a stay to pursue postconviction relief, we review the postconviction court's decisions using the standard we would apply in a direct appeal. *Santiago v. State,* 644 N.W.2d 425, 439 (Minn.2002). Whether a defendant can waive or forfeit review of a criminal history score depends on how the rules of criminal procedure and certain related statutes are interpreted and is thus a question of law, which we review de novo. *See State v. Nerz,* 587 N.W.2d 23, 24–25 (Minn.1998).

The court of appeals concluded that a criminal defendant has an unwaivable statutory right to appeal a sentence and therefore cannot waive the right to appeal a criminal history score because this score is a key factor in calculating the defendant's sentence. *Maurstad,* 706 N.W.2d at 549. We do not read our case law to support the court of appeals' broad construction of a defendant's right to appeal sentencing issues. *See, e.g., State v. Henderson,* 706 N.W.2d 758, 760 (Minn.2005) (recognizing that under certain circumstances, a defendant's failure to object to sentencing issues at the time of sentencing will foreclose appellate review of those issues). What we have held is that a defendant may not waive sentencing issues in some contexts—for example, when a particular kind of sentencing error results in an illegal sentence. *See, e.g., State v. Goff,* 418 N.W.2d 169, 172 (Minn.1988); *see also* Minn. R.Crim. P. 27.03, subd. 9 ("The court at any time may correct a sentence not authorized by law."). Thus, in *Goff,* we held that a defendant may challenge a criminal history score for the first time after sentencing, when the score includes a prior conviction obtained in violation of the defendant's right to counsel. 418 N.W.2d at 172.

■ The court of appeals resolved the waiver issue in this case by focusing on the nature of Maurstad's right to appeal his sentence. But we believe that the appropriate focus is on a different interest at stake—that is, the legislature's stated public policy of achieving uniformity in sentencing. In *State v. Misquadace,* we acknowledged the legislature's unequivocal statement that "[s]*entencing pursuant to the sentencing guidelines is not a right that accrues to a person convicted of a felony;* it is a procedure based on state public policy to maintain uniformity, proportionality, rationality, and predictability

in sentencing." 644 N.W.2d 65, 69 (Minn. 2002) (quoting Act of May 6, 1997, ch. 96, § 1, 1997 Minn. Laws 694, 695) (codified at Minn.Stat. § 244.09, subd. 5 (2006)).

In order to effectuate the foregoing policy, sentences must be based on correct criminal history scores, as these scores are the mechanism district courts use to ensure that defendants with similar criminal histories receive approximately equal sanctions for the same offense. *See* Minn. Sent. Guidelines I (providing that one purpose of the guidelines is to "ensure that sanctions * * * are proportional to the severity of the offense of conviction *and the extent of the offender's criminal history*" (emphasis added)). We also note that imposition of the presumptive sentence under the Minnesota Sentencing Guidelines is mandatory absent additional findings. *State v. Shattuck*, 704 N.W.2d 131, 141 (Minn.2005); *see also State v. Pince*, 358 N.W.2d 435, 438 (Minn.App.1984) (requiring a sentence reduction when a miscalculated criminal history score leads to an unauthorized departure from the presumptive sentence), *rev. denied* (Minn. Mar. 6, 1985).

Based on the foregoing analysis, we conclude that because a sentence based on an incorrect criminal history score is an illegal sentence—and therefore, under Minn. R.Crim. P. 27.03, subd. 9, correctable "at any time"—a defendant may not waive review of his criminal history score calculation. Accordingly, we hold that the postconviction court erred when it declined to consider Maurstad's criminal history score claim on the basis of waiver.

## II.

The state argues that even if Maurstad could not *waive* review of his criminal his-

tory score calculation by asking the district court to impose the recommended sentences in the PSI report and sentencing worksheets, he could and did *forfeit* the alleged calculation error by failing to object before or at the time of sentencing as "required" by Minn. R.Crim. P. 27.03, subd. 1(D), (F). The state further argues that under Minn. R.Crim. P. 31.02, we should apply plain error review to all unobjected-to errors, including criminal history score errors. Finally, the state asserts several policy-based reasons why we should require timely objections to preserve sentencing issues, including the incentive that such a requirement would provide for defendants to take district court proceedings more seriously and to make them as error-free as possible.

We agree with the state that criminal defendants should object to any errors in their criminal history score calculations at the time of sentencing, following the process set forth in Minn. R.Crim. P. 27.03, subd. 1(D), (F). We also agree that certain policies would be served by requiring timely objections to such errors. But these points of agreement do not alter our conclusion that the receipt of a mandatory presumptive sentence—which is necessarily predicated on a correct criminal history score under the Minnesota Sentencing Guidelines—is not a defendant's right to waive, or, logically, forfeit. As we stated in *State v. Osborne*, 715 N.W.2d 436, 443 (Minn.2006), "forfeiture is nothing more than * * * waiver by silence," and we see little logic in allowing a defendant to waive by silence a criminal history score calculation that he cannot waive by affirmative act.[4]

---

4. We recognize that *Osborne*'s discussion of waiver and forfeiture arose in a legal context substantively different from the context we

confront in this case. For example, unlike the case before us today, *Osborne* centers on a constitutional issue—that is, whether a defen-

Moreover, we cannot agree with the dissent that Minn. R.Crim. P. 31.02 qualifies the authority of courts to correct an illegal sentence at any time. The dissent acknowledges that a defendant cannot waive review of his criminal history score calculation because this calculation implicates our authority to correct an illegal sentence "at any time" under Rule 27.03, subd. 9. But the dissent nonetheless asserts that Maurstad could and did forfeit—i.e., waive by silence—such review, and therefore, "the *only* review to which [he] is entitled" under Rule 31.02 is review for plain error. We disagree with the dissent's application of Rule 31.02 in this case as a matter of policy. Specifically, we cannot now anticipate a case in which, after concluding that a defendant received an illegal sentence, we would decline to correct it because the error that led the district court to impose the sentence was not plain.

For the foregoing reasons, we conclude that a defendant cannot forfeit review of his criminal history score calculation, and accordingly, the plain error doctrine is inapplicable in this case.[5] We therefore hold that the postconviction court erred when it declined to consider Maurstad's criminal history score claim on the basis of forfeiture.

### III.

We next address whether the district court erred in assigning Maurstad a custody status point under Minn. Sent. Guidelines II.B.2.c. Construction of the sentencing guidelines is a question of law that we review de novo. *State v. Zeimet*, 696 N.W.2d 791, 793 (Minn.2005). The goal of statutory construction is to effectuate legislative intent. *Id.* If the statutory language is plain and unambiguous, we do not engage in any further construction and instead look to the plain meaning of the statutory language. *State v. Wukawitz*, 662 N.W.2d 517, 525 (Minn.2003). But when the language of a criminal law is ambiguous, we construe it narrowly according to the rule of lenity. *Zeimet*, 696 N.W.2d at 794.

By the time Maurstad committed the current offenses, the Minnesota Sentencing Guidelines assigned a custody status point to offenders who "committed the

---

dant can forfeit his Sixth Amendment right under *Blakely*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, to have a jury find the facts necessary to support an upward sentencing departure. *Osborne*, 715 N.W.2d at 440–41. Further, as the dissent correctly notes, *Osborne* concerns the actions a defendant must take under our rules of criminal procedure in order to waive the right to a jury trial, whereas this case concerns the actions a defendant must take under those rules in order to preserve a criminal history score error for appeal.

Mindful of the differences between *Osborne* and this case, we do not "rely" on *Osborne*—as the dissent asserts—to support our conclusion on forfeiture. Rather, we cite *Osborne* for its exploration of the relationship between forfeiture and waiver. We stated in *Osborne* that we have never accepted forfeiture or "waiver by silence" as a substitute for affirmative waiver—that is, an express waiver that

is "knowing, voluntary, and intelligent"—in cases when we require an affirmative waiver because of the nature of the right at stake. *Id.* at 443. Drawing on the discussion in *Osborne*, we conclude that just as it would be logically untenable to allow a defendant to waive by silence a right that he *must* waive by affirmative act, it would be logically untenable to allow a defendant to waive by silence an alleged error that he *cannot* waive by affirmative act.

**5.** Contrary to the dissent's apparent contention, a sentencing error does not ipso facto result in "a sentence not authorized by law" as contemplated in Minn. R.Crim. P. 27.03, subd. 9. Accordingly, our conclusion that a defendant may not forfeit review of his criminal history score does not, as the dissent asserts, create a broad exception to Minn. R.Crim. P. 31.02 for sentencing errors.

current offense within the period of *the initial length of stay pronounced by the sentencing judge* for a prior felony." Minn. Sent. Guidelines II.B.2.c (emphasis added).[6] Given this language, the parties are asking us to determine what "initial length of stay" the Pennington County District Court "pronounced" for the purposes of section II.B.2.c. We must make this determination in light of (1) the court's sentencing pronouncement that, "it is hereby ordered that the imposition of sentence is stayed and you will be placed on supervised probation * * * for a period *not to exceed the statutory maximum* [of ten years]" (emphasis added); and (2) the fact that approximately 45 months after pronouncing this sentence and 34 months before Maurstad committed the current offenses, the same court discharged Maurstad from probation for this conviction.

The state argues that section II.B.2.c of the sentencing guidelines is unambiguous, that Maurstad's "initial length of stay" was 10 years, and that Maurstad's discharge from probation after 45 months should have no bearing on his criminal history score calculation in relation to custody status. Despite the state's initial contention that the applicable guidelines are unambiguous, we conclude that the state's arguments center not on the unambiguous nature of the guidelines' language, but rather on the intent behind that language. For example, the state surmises that the Sentencing Guidelines Commission's purpose in amending section II.B.2 was to promote uniformity among Minnesota district courts in determining custody status, given

widely varying practices for "early discharges" from probation. We agree with the state's tacit recognition that the intent of the Sentencing Guidelines Commission as to section II.B.2.c is relevant here, because we conclude that the language of this section is ambiguous in light of the words the Pennington County District Court used in "pronouncing" Maurstad's length of stay. *See, e.g., State v. Colvin*, 645 N.W.2d 449, 452 (Minn.2002) (stating that when the language of a criminal statute is ambiguous, legislative intent controls). Specifically, it is not clear how the phrase "initial length of stay" is to be applied in a case where a sentencing court places the defendant on probation for an indeterminate period.

In a 2002 report to the state legislature, the Sentencing Guidelines Commission summarized its amendment to section II.B.2.c by stating that

> [a]n additional custody status point was given to some offenders. Offenders who are initially given probation *for a period of years*, but are subsequently *discharged early from probation* (before the time period initially pronounced by the court has run out), will receive a custody status point if the offender commits a new offense during the pronounced original period of probation.

Minn. Sent. Guidelines Comm'n, *Report to the Legislature* 3 (2002) (emphasis added). The report identifies the focus of section II.B.2.c as the offender who has been "discharged early from probation." This focus

---

**6.** The Sentencing Guidelines Commission added II.B.2.c to the guidelines' custody status provisions in 2001. Before this amendment took effect, an offender received a custody status point only if his offense occurred while the offender was "on probation, parole, supervised release, conditional release, or confined" in a penal institution, or while the offender was released pending sentencing.

Minn. Sent. Guidelines Comm'n, *Report to the Legislature* 10 (2002). The comment associated with amended section II.B.2.c states, "The Commission believes that the potential for a custody status point should remain for the entire period of *the initial length of stay* pronounced by the sentencing judge." Minn. Sent. Guidelines cmt. II.B.201 (emphasis added).

is further evidenced by the language of section II.B.2.c stating that "[t]his policy does not apply if the *probationary sentence* for the prior offense is revoked, and the offender serves an executed sentence." Minn. Sent. Guidelines II.B.2.c (emphasis added). We therefore conclude that the phrase "initial length of stay" refers to the initial length of a defendant's probationary term pronounced by the sentencing judge. Thus the question is—is Maurstad an offender who has been discharged early from probation and still within the initial length of a probationary term ordered for a prior conviction? We acknowledge that this question presents a close call, but we ultimately conclude that the answer is no. *See Colvin,* 645 N.W.2d at 452 (stating that when we interpret penal statutes, "all reasonable doubt concerning legislative intent should be resolved in favor of the defendant").[7]

We conclude that if the Pennington County District Court had placed Maurstad on probation *for* 10 years, he could have been "discharged early from probation" on any date before 10 years had passed and therefore still be within the "initial length of stay" when he committed the current offenses. But that is not what happened here. The Pennington County court instead placed Maurstad on probation "for a period *not to exceed* the statutory maximum [ten years]." (Em-

phasis added.) Under this sentencing order, the initial length of Maurstad's probationary term was as short as zero years and as long as 10 years; thus, when Maurstad was discharged 45 months after sentencing, he was simply discharged from probation, not "discharged early from probation." We therefore conclude that Maurstad's current offenses were not committed within the probationary term pronounced by the court for the Pennington County conviction, and he should not have received a custody status point.

The state argues that placing indeterminate probationary terms outside the ambit of Minn. Sent. Guidelines II.B.2.c will render that section a nullity. Specifically, the state asserts that the purpose of the 2001 amendment to section II.B.2 was to eliminate disparate treatment of defendants based on how early they were discharged from probation for prior offenses, and treating determinate and indeterminate probationary terms differently necessarily frustrates this purpose. While the state's argument has some merit, we find it unpersuasive because it ignores the possibility that determinate and indeterminate probationary terms may differ from one another in ways as fundamental as a defendant's understanding of the exact terms of his sentence. It also assumes that specific word choices at sentencing do not or

---

**7.** The dissent quotes *State v. McGee,* 347 N.W.2d 802, 805–06 (Minn.1984) for the proposition that when the sentencing guidelines are ambiguous, we should resolve the ambiguity by looking to "commission policy and official commission interpretation" in addition to the rule of lenity. We agree with the foregoing statement but dispute the dissent's contention that our application of Minn. Sent. Guidelines II.B.2.c to the facts of this case contravenes commission policy and official commission interpretation. It is also important to note that in *McGee*—a case involving a disputed guidelines provision—we ultimately resolved the provision's ambiguity in the de-

fendant's favor after applying the following principles:

> We start with the proposition that the [defendant's] argument is not necessarily inconsistent with the language of the [guidelines provision] and [related] comment. * * * In any event, even if the provision is ambiguous, defendant's interpretation should be accepted on the principles (a) *that ambiguities should be resolved against the state and in the defendant's favor* and (b) that commission policy and official commission interpretation should be looked to in resolving ambiguities of this sort.

*Id.* at 805–06 (emphasis added).

should not matter; but they do matter, especially when a person's liberty is at stake. An order requiring an offender to abide by certain conditions for a period "of 10 years" or face an executed sentence is arguably more onerous than an order to do the same for a period of "up to 10 years," even though the offender may be discharged in fewer than 10 years under either order. *See* Minn.Stat. § 609.135, subd. 2(f) (2006) (providing that "[t]he defendant shall be discharged six months after the term of the stay expires, unless * * * the defendant has already been discharged"); *State v. Rodriguez*, No. A04–2192, 2005 WL 1669493, at *2 (Minn.App. July 19, 2005) (discussing the custody status of an offender whose sentence was stayed "for 40 years" and who was discharged from probation after approximately six years), *rev. denied* (Minn. Sept. 28, 2005).

We also acknowledge that the state has a colorable argument that any differences that may exist between determinate and indeterminate probationary terms cannot justify the impact that our interpretation of section II.B.2.c will have on offenders. Specifically, offenders with otherwise identical criminal histories who commit new offenses will be treated differently depending on whether they were previously discharged from determinate probationary terms or indeterminate probationary terms. We nonetheless conclude that absent a clear statement from the Sentencing Guidelines Commission that a probationary term of "up to" a specified number of years is the equivalent of a probationary term "of" a specified number of years, offenders in Maurstad's position should not receive a custody status point. Again, we

base this conclusion on our belief that in a proceeding as fundamental to a person's liberty as sentencing, the sentencing court's word choices do matter.

Finally, we recognize that our conclusion may require probation officers to spend some additional time completing PSI reports and sentencing worksheets, to the extent that probation officers must now determine whether a particular defendant's probationary term was determinate or indeterminate.[8] But in light of the numerous appeals defendants have already brought on the basis of improperly calculated criminal history scores, the efficiency that the judicial system would realize from more thorough and accurate PSI reports may offset any additional burden on probation officers. Moreover, the responsibility of probation officers and district courts to ensure the accuracy of every defendant's criminal history score is fundamental to achieving the state's policy of uniform sentencing under the sentencing guidelines. We believe that this responsibility outweighs any administrative concerns advanced by the state.

For the foregoing reasons, we affirm the court of appeals holding that the district court erred in assigning Maurstad a custody status point under Minn. Sent. Guidelines II.B.2.c, and we remand to the district court for resentencing using a three-point criminal history score.

Affirmed and remanded to the district court for resentencing.

GILDEA and ANDERSON, G. BARRY, JJ., dissent.

8. We note that in Maurstad's case, the indeterminate nature of the probationary term he received for the Pennington County conviction was clearly identifiable from the court order discharging him from probation for that conviction. Specifically, the commissioner's recommendation on the order stated that Maurstad had been "placed on probation to the Commissioner of Corrections for a period of 0–10 years."

GILDEA, Justice (dissenting).

I respectfully dissent. The issue in this case relates to the calculation of Maurstad's criminal history score. The district court included a custody status point based on Maurstad's 1996 conviction for felony aiding second-degree burglary. For the 1996 crime, Maurstad received a stay of imposition of sentence and was "placed on supervised probation * * * for a period not to exceed the statutory maximum," which was 10 years. In November 1999, pursuant to a recommendation by the agency supervising Maurstad's probation, the district court discharged Maurstad from probation as well as from his stayed imposition of sentence. As a result, his felony conviction was deemed a misdemeanor by operation of Minn.Stat. § 609.13, subd. 1(2) (2006).

The instant case arises from criminal offenses Maurstad committed in 2003. Because Maurstad was discharged before these crimes were committed, he argues and the majority holds that the district court erred by including the custody status point. In my view, the Minnesota Sentencing Guidelines require that Maurstad's criminal history score include the custody status point. Accordingly, I would reverse the court of appeals.

## I.

We must first address whether Maurstad is entitled to review of the district court's decision to include the custody status point in the calculation of his criminal history score, and if so, we must decide the lens through which we will examine the issue. The majority concludes that Maurstad did not waive review of the custody status point issue and that we should examine this issue under a plenary standard of review. I agree as to the first conclusion and disagree on the second.

As the majority notes, Maurstad pleaded guilty to the 2003 controlled substance crimes, and the district court ordered that a presentence investigation report be completed. The PSI noted Maurstad's 1996 conviction and the fact that he was placed on probation for 0–10 years. The PSI did not indicate that Maurstad was discharged in 1999. But Maurstad submitted no objection to the PSI. Maurstad likewise made no objection at his sentencing to the PSI's failure to indicate that he had been discharged.

The state argues that because Maurstad did not object to the custody status point, as required by Minn. R.Crim. P. 27.03, subd. 1, he waived the right to further review of the custody status point question. I agree with the majority that we should not find a waiver of this sentencing question in this case. Minnesota Rule of Criminal Procedure 27.03, subd. 9, provides that "[t]he court at any time may correct a sentence not authorized by law." Maurstad's argument is that his sentence is not authorized by law because the district court erroneously calculated his criminal history score. The language of our criminal rule appears to preclude a finding of waiver in this case. But the conclusion that the defendant did not waive his right to review does not dictate the lens through which the reviewing court should view the issue raised. In my view, the answer to this question is also found in our criminal rules.

Under Minn. R.Crim. P. 27.03, subd. 1(D), Maurstad was required to bring a motion for a sentencing hearing if he desired to challenge "any portion of the presentence investigation report." The motion must "specifically set forth the reasons for the motion, including a designation of any portion of the presentence investigation report or sentencing guidelines worksheet challenged, and the

grounds for the challenge." *Id.* Maurstad brought no such motion. Under Minn. R.Crim. 27.03, subd. 1(F), Maurstad had the additional opportunity to raise any remaining issues during his sentencing. This portion of the rule is also mandatory, requiring that "any remaining factual or legal issues relating to the sentence shall be succinctly stated on the record." *Id.* At the sentencing, the district court specifically asked defense counsel whether there was "a need for a hearing on the factual content of the PSI." Maurstad raised no objection to what he now claims was the erroneous inclusion of the custody status point within his criminal history score. That is the time Maurstad should have raised the issue.[9]

Because our rules required Maurstad to raise his objection before the district court, and he failed to do so, Maurstad did not preserve the issue about which he now complains. Accordingly, under our rules, the *only* review to which Maurstad is entitled—before this court and before the postconviction court on post-trial motions—is review for plain error. Our rule provides: "Plain errors or defects affecting substantial rights may be considered by the court upon motions for new trial, post-trial motions, and on appeal although they were not brought to the attention of the trial court." Minn. R.Crim. P. 31.02. The clear language of Rule 31.02 compels the

conclusion that our review of Maurstad's sentencing issue, which was not "brought to the attention of the trial court," must be for plain error. *Id.*

As we have said many times, application of the plain error doctrine encourages defendants to object while in the district court so that any errors can be corrected before their full impact is realized. *See, e.g., State v. Ramey,* 721 N.W.2d 294, 298–99 (Minn.2006). We have applied the plain error doctrine to a full range of unobjected-to errors, from evidentiary issues to constitutional challenges. *See, e.g., State v. Martin,* 695 N.W.2d 578, 582–83 (Minn. 2005) (applying plain error analysis to Confrontation Clause issue); *State v. Jones,* 678 N.W.2d 1, 17 (Minn.2004) (applying plain error analysis to evidentiary issue). We should likewise apply the doctrine in this case.

The majority attempts to sidestep the important standard-of-review question by discussing "the legislature's stated public policy of achieving uniformity in sentencing." Because an accurate criminal history score is essential to achieving sentencing uniformity, the majority concludes Maurstad did not waive his right to challenge his sentence based on a purportedly inaccurate criminal history score. And because Maurstad did not waive his right to challenge his sentence, the majority holds that he also did not forfeit his right to

---

**9.** Apparently, Maurstad's attorney was unaware of Maurstad's 1996 conviction and 1999 discharge. Maurstad, however, was certainly aware of these events. He pleaded guilty to the crimes in 1996 and his supervising probation agency specifically moved the court for an order relieving Maurstad of the obligation of supervised probation in October 1999. Maurstad's case is thus different from the situation we confronted in *State v. Osborne* where we concluded that application of the plain error doctrine was not appropriate. 715 N.W.2d 436, 445–46 (Minn.2006). In *Osborne* we found that the defendant was unaware of the issue that was the subject of appellate review. *Id.* at 443–44. Moreover, in *Osborne,* the applicable criminal rule specifically required that the defendant affirmatively act to waive the right at issue in that case—the right to a jury trial—either in writing or orally on the record. *Id.* at 442–43; *see also* Minn. R.Crim. P. 26.01, subd. 1(2). By contrast, in this case, the rule requires that the defendant take affirmative action to preserve the right. *See* Minn. R.Crim. P. 27.03, subd. 1. Thus, I find the majority's reliance on *Osborne* misplaced.

challenge his sentence. But the majority does not articulate how it can, consistent with our criminal rules, apply a plenary standard of review here. The majority instead chooses, "as a matter of policy," not to apply Minn. R.Crim. P. 31.02. The majority, in essence, has written an exception into Rule 31.02, that plain error will not apply when the error alleged is one related to sentencing. In my view, we should not rewrite our court rules in specific cases, as the majority does here. We have a process for revision of court rules, and that process should be followed before rules are changed. I believe that our criminal rules, as currently written, require us to analyze Maurstad's claim through the lens of plain error.

## II.

I turn next to examine whether the district court committed plain error when it included the custody status point in Maurstad's criminal history score. Minnesota Sentencing Guidelines II.B.2.c. requires the assignment of a custody status point if Maurstad "committed the current offense within the period of the initial length of stay pronounced by the sentencing judge for a prior felony." [10] Here, the district court stayed imposition of Maurstad's sentence "for a period not to exceed the statutory maximum." The statutory maximum for Maurstad's crime—aiding and abetting the commission of second-degree burglary—was (and is) ten years. *See* Minn.Stat. § 609.582, subd. 2 (2006). Thus, "the period of the initial length of stay" was not to go beyond February 2006, ten years from the date the sentence was stayed. Maurstad committed the crimes at issue here before February 2006. Thus, the district court did not err, much less commit plain

error, in giving Maurstad the custody status point.

In reaching a contrary conclusion, the majority finds that section II.B.2.c. is ambiguous as applied to this case. Specifically, the majority concludes that the district court's 1996 sentencing order was ambiguous when it pronounced the length of its stay of sentence imposition. In my view, the distinction the majority creates in the sentencing order so that it may find an ambiguity—between "up to 10 years," and "for 10 years"—is one of form over substance. Moreover, the majority does not explain how an ambiguity in a district court sentencing order can render the plain language of Minn. Sent. Guidelines II.B.2.c ambiguous. In my view, there is nothing ambiguous about the phrase "period of the initial length of stay."

In any event, the majority utilizes the ambiguity it has created in the sentencing court's order as a basis to reach for lenity. Because there is an ambiguity, the majority holds that the principle of lenity dictates that we should interpret the district court's 1996 sentencing order in the light most favorable to the defendant. This lenient interpretation leads the majority to conclude that Maurstad should not have been given a custody status point. Lenity does not lead me to conclude that it was plain error to give Maurstad the custody status point.

We have said that we will not invoke principles of lenity when the statute at issue is not ambiguous. *State v. Loge*, 608 N.W.2d 152, 156 (Minn.2000) ("[W]here, as here, we have interpreted the statute and find no ambiguity, 'the so-called rule of lenity * * *' has no application.") (internal

---

**10.** This provision, which was not effective until 2001, applies to the crimes Maurstad committed in 2003. *See* Minn. Sent. Guidelines III.F ("Modifications to the Minnesota Sentencing Guidelines and associated commentary will be applied to offenders whose date of offense is on or after the specified modification effective date.").

quotations omitted). Because I find no ambiguity in Minnesota Sentencing Guidelines II.B.2.c, I would not resort to lenity in this case.

But even if I were to find an ambiguity, lenity would not lead me to conclude that the district court erred in this case. As the United States Supreme Court has said: "The rule of lenity applies only if, after seizing everything from which aid can be derived, * * * we can make no more than a guess as to what Congress intended." *Muscarello v. United States*, 524 U.S. 125, 138, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998) (internal quotations omitted). We have also recognized that we should not apply lenity in knee-jerk fashion but should look also to "commission policy and official commission interpretation * * * in resolving ambiguities" in the guidelines. *State v. McGee*, 347 N.W.2d 802, 805–06 (Minn. 1984). The majority ignores a provision in the legislation establishing the guidelines and tries to bypass relevant commentary to the guidelines in reaching toward lenity.[11]

The legislature directed that the *"primary consideration"* of the Guidelines Commission "shall be public safety." Minn.Stat. § 244.09, subd. 5 (2006) (emphasis added). Just as important is what the commission said about the exact circumstance this case presents. With regard to the application of section II.B.2.c, the commission said:

the potential for a custody status point should remain for the entire period of the initial length of stay pronounced by the sentencing judge. An offender who is discharged early but subsequently is convicted of a new felony within the period of the initial length of stay should still receive the consequence of a custody status point.

Minn. Sent. Guidelines cmt. II.B.201.[12]

As we said in *McGee*, we must consider these expressions of intent, not exclusively notions of lenity, when we are construing an ambiguous provision in the guidelines. 347 N.W.2d at 805–06. These expressions confirm for me that it was not plain error to give Maurstad the custody status point.

The result reached by the district court's inclusion of the custody status point serves the legislature's "primary consideration" of public safety. Minn.Stat. § 244.09, subd. 5. It is consistent with considerations of public safety for a felon with multiple convictions to be held accountable for his recidivist behavior through the use of a custody status point. *See State v. McFee*, 721 N.W.2d 607, 618 (Minn.2006) ("Using prior felonious behavior * * * to increase a recidivist's sentence * * * promot[es] public safety." (internal quotations omitted)).

Not only does application of the custody status point serve the goal of public safety, but it is also what the commission plainly

---

11. With respect to lenity, it seems to me that what the 1996 sentencing court did in this case comports with notions of lenity. Maurstad received the benefit of a stay of imposition of sentence. The sentencing court, in the exercise of its discretion, then gave Maurstad the longest possible stay period within which to pay the $9,676 restitution he was ordered to pay to his victim. It is plainly more lenient to give a defendant up to 10 years to pay restitution than to shorten the time period during which the defendant must make his victim whole or face greater sanctions.

12. While this commentary may not be binding on this court, *Asfaha v. State*, 665 N.W.2d 523, 526 (Minn.2003), it helps determine the intent of the drafters, which is relevant if one were to conclude, as the majority does, that section II.B.2.c. is ambiguous. This commentary confirms that the drafters intended a custody status point to be given in Maurstad's situation.

intended here as expressed in comment II.B.201. The majority attempts to dodge the effect of comment II.B.201. Specifically, the majority uses its concept of lenity to construe the sentencing court's order as a decision to place Maurstad on probation for an "indeterminate" period of time. Because the probationary period was "indeterminate," the majority concludes that the discharge in November 1999 was not an "early discharge." Thus, the commentary in section II.B.201 is apparently not relevant to the majority. But when the record is construed in connection with the relevant statute, the commentary cannot be so easily dismissed.

The relevant statute, Minn.Stat. § 609.135, subd. 2(a) (2006), provides that for most felony convictions "the stay shall be for not more than four years or the maximum period for which the sentence of imprisonment might have been imposed, whichever is longer." By operation of this same statute, Maurstad would have been discharged automatically six months after the expiration of the stay period pronounced by the court in February 1996, "unless the stay ha[d] been revoked or extended * * * or the defendant ha[d] already been discharged." Minn.Stat. § 609.135, subd. 2(f). The agency supervising Maurstad asked the court, in October 1999, to discharge Maurstad. This request was necessary because without it Maurstad's probation would have continued by operation of law. Thus, Maurstad was discharged early from probation.

The majority acknowledges that the question of whether Maurstad is "an offender who has been discharged early from probation and still within the initial length of a probationary term * * * presents a close call." The answer to this question, however, is the foundation upon which the majority rests its conclusion that the district court erred here. The majority's concession that the dispositive question presents a "close call," by definition, means that the district court did not commit plain error. *See State v. Strommen,* 648 N.W.2d 681, 688 (Minn.2002) ("An error is 'plain' if it was 'clear' or 'obvious.' ").

I would hold that the district court did not commit plain error and therefore reverse the court of appeals, and uphold the sentence as imposed.

ANDERSON, Barry G., Justice (dissenting).

I join in the dissent of Justice Gildea.