*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1458**

Robert Bryant Salley, Jr., petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed June 10, 2024**
**Affirmed**
**Larkin, Judge**

Olmsted County District Court
File No. 55-CR-20-288

Cathryn Middlebrook, Chief Appellate Public Defender, Michael McLaughlin, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James E. Haase, Senior Assistant County Attorney, Rochester, Minnesota (for respondent)

Considered and decided by Larkin, Presiding Judge; Frisch, Judge; and Larson, Judge.

**NONPRECEDENTIAL OPINION**

**LARKIN**, Judge

Appellant challenges his sentence for second-degree felony murder, arguing that it was based on an incorrect criminal-history score. We affirm.

**FACTS**

Respondent State of Minnesota charged appellant Robert Bryant Salley, Jr. with shooting and killing an individual. The criminal complaint contained three counts: count one—second-degree felony murder; count two—unlawful possession of a firearm; and count three—unlawful possession of ammunition.

Salley pleaded guilty to unlawful possession of a firearm and second-degree felony murder, pursuant to a plea agreement with the state. At the beginning of the plea hearing, the district court provided an overview of the plea agreement, as set forth in Salley's petition to plead guilty. Under the terms of the agreement, Salley would plead guilty to unlawful possession of a firearm and second-degree felony murder, and the state would dismiss the remaining charge of unlawful possession of ammunition. As to the prison sentence to be imposed, the state would recommend no more than a presumptive sentence of 210 months, and Salley was free to argue for a presumptive sentence of 179 months.

The plea agreement anticipated that the district court would sentence the firearm-possession offense first, because it occurred first in time. The agreement also anticipated that the criminal-history points resulting from the firearm-possession offense would be included in Salley's criminal-history score for his felony-murder sentence. As a result, the felony murder—a severity level ten offense—would be sentenced based on a criminal-history score of four, resulting in a presumptive-sentence range of 179 to 252 months, which encompassed the parties' preferred presumptive sentences.

At the plea hearing, the district court astutely noted that there was an issue regarding the "ordering of the charges," explaining:

2

> MNCIS populates sentencing orders based on the numbering in the system, but *the reality is we have to sentence based on first in time.* And if we don't straighten this out now, it will create difficulty at sentencing to make sure the worksheets are correct and he's sentenced appropriately. So what we had discussed is that the prosecutor . . . would amend the ordering of the charges. Not the complaint, but the order of the charges, so that this is done right. So what that means . . . is count two should now become count one; count one becomes count two; and count three can just remain as is, and that's the one that will be dismissed at sentencing.

(Emphasis added.)

After Salley was sworn and waived his trial rights, the district court reviewed the terms of the plea agreement with him as follows:

> You're going to plead guilty to . . . ineligible person in possession of a firearm; you will plead guilty to the second[-]degree murder with no intent while committing a felony charge; the third charge will be dismissed. The [s]tate will cap its recommendation for a presumptive sentence of 210 months, that's [the] middle of the box. The defense is free to argue for [the] bottom of the box, which would be 179 months. And all other terms and conditions will be open to argument.

Salley acknowledged that the district court had accurately recited the terms of the plea agreement. Then he pleaded guilty to the offenses.

At sentencing, the parties and district court received a sentencing worksheet that was consistent with the stated intent of the parties and the district court: the worksheet indicated that second-degree felony murder was a severity-level-ten offense and that it would be sentenced based on a criminal-history score of four.[1] The district court heard

---

[1] The sentencing worksheet indicates that Salley's criminal-history score was 2.5 before sentencing of the underlying offenses. Salley's conviction and sentence for the firearm-

3

victim-impact statements, arguments from counsel regarding the length of the felony-murder sentence, and Salley's allocution. As anticipated, the prosecutor argued for a prison sentence of 210 months, and the defense argued for 179 months. The district court announced its decision regarding the disputed sentencing issue—the length of the felony-murder sentence as follows:

> The goals of sentencing serve a variety of purposes, and the attorneys have touched on that this afternoon. The [c]ourt must be concerned with public safety in imposing the appropriate sanction for the taking of a life of another. The [s]tate has argued for 210 months, the defense has argued for 179 months. Considering the files, the records, the proceedings, the statements that were advanced this afternoon, the [c]ourt sentences you, [Salley], to 210 months.
> First, you are adjudicated guilty of both of these offenses. On the first, you are committed to the Commissioner of Corrections of the State of Minnesota for a period of 60 months. On the second, second-degree murder, you are committed to the Commissioner of Corrections of the State of Minnesota for a period of 210 months, concurrent sentencing.

The ensuing warrant of commitment listed count one as unlawful possession of a firearm, with a sentence of 60 months, and count two as second-degree felony murder, with a sentence of 210 months.

In March 2023, Salley petitioned for postconviction relief, arguing that the district court "pronounced [his] sentence for the felony murder conviction first," that his criminal-history score was therefore two—and not four—when he was sentenced on the felony murder, and that "[t]he district court erroneously sentenced him based on a criminal

---

possession offense would result in another 1.5 felony points, raising his criminal-history score to four for his felony-murder sentence.

4

history score of four." *See State v. Beganovic*, 974 N.W.2d 278, 281 (Minn. App. 2022) ("When a defendant's criminal-history score includes a partial custody-status point, the partial point must be disregarded when determining the presumptive sentence."), *aff'd on other grounds*, 991 N.W.2d 638 (Minn. 2023).

The same district court judge presided over Salley's plea hearing, sentencing hearing, and postconviction proceeding. And that judge denied Salley's postconviction petition. In doing so, the postconviction court explained that it had "deliberately addressed the order of the offenses with the parties at the plea and sentencing hearings," that its statement that it was sentencing Salley to 210 months was merely an explanation of its decision, and that its explanation was provided "*before* it adjudicated Salley guilty of either [of the] offense[s]." The postconviction court noted that "one second" after the sentencing court stated it was sentencing Salley to 210 months, "it announced that Salley was adjudicated guilty of both offenses and then sentenced Salley in accordance with the plea agreement—ineligible person in possession of a firearm sentenced first, and second-degree unintentional murder sentenced second."

Salley appeals.

## DECISION

Salley challenges the denial of his postconviction petition, arguing that the district court sentenced the felony murder before the firearm-possession offense and that his criminal-history score for the felony-murder offense therefore should not have included any criminal-history points based on the firearm-possession offense.

We review the denial of a postconviction petition for an abuse of discretion. *Taylor v. State*, 874 N.W.2d 429, 430 (Minn. 2016). "In doing so, we review the postconviction court's underlying factual findings for clear error and its legal conclusions de novo." *Id.* at 430-31 (quotation omitted). "A postconviction court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012) (quotation omitted).

"The court may at any time correct a sentence not authorized by law." Minn. R. Crim. P. 27.03, subd 9. "[S]entences must be based on correct criminal history scores, as these scores are the mechanism district courts use to ensure that defendants with similar criminal histories receive approximately equal sanctions for the same offense." *State v. Maurstad*, 733 N.W.2d 141, 147 (Minn. 2007). A sentence based on an incorrect criminal-history score is illegal and may be corrected at any time under Minn. R. Crim. P. 27.03, subd 9. *Id.*

"Multiple offenses sentenced at the same time before the same court must be sentenced in the order in which they occurred." Minn. Sent'g Guidelines 2.B.1.e (Supp. 2019). Under the *Hernandez* method of sentencing, if "a defendant is sentenced for multiple offenses on the same day, a conviction for which the defendant is first sentenced is added to his or her criminal-history score for another offense for which he or she is also sentenced." *State v. Williams*, 771 N.W.2d 514, 521 (Minn. 2009); *State v. Hernandez*, 311 N.W.2d 478, 481 (Minn. 1981) (allowing a district court to increase a defendant's criminal-history score when sentencing multiple offenses on the same day if certain conditions are met). When using the *Hernandez* method, the district court must sentence

6

the offenses in the order that they occurred. *State v. Anderson*, 345 N.W.2d 764, 764 (Minn. 1984).

Under the sentencing guidelines, a felony conviction may be included in a criminal-history score only if the "sentence was stayed or imposed before the current sentencing." Minn. Sent'g Guidelines 2.B.1 (Supp. 2019). Salley argues that because the firearm offense was not sentenced before the felony-murder offense, the firearm offense could not count toward his criminal-history score for the felony murder. In sum, the issue here is which came first: the firearm-possession sentence or the felony-murder sentence?

For two reasons, we affirm the postconviction court's determination that the district court sentenced the firearm offense first and that, therefore, the criminal-history points from that offense were properly included in Salley's criminal-history score for the felony-murder sentence. Thus, Salley's sentence for felony murder was not based on an incorrect criminal-history score.

**I.**

The first reason we affirm the postconviction court's denial of Salley's request for relief is because it puts form over substance. Salley relies on a single statement by the district court as proof that the district court sentenced the felony murder first: "the [c]ourt sentences you, [Salley], to 210 months." Salley would have us base our decision on that single statement, viewed in isolation. But we generally consider statements in context, and not in vacuum. *See State v. Taylor*, 650 N.W.2d 190, 208 (Minn. 2002) (stating that a reviewing court considers the prosecutor's closing argument as a whole and does not focus

7

on selected phrases taken out of context). We therefore turn to the context of the sole statement on which Salley relies.

That single remark was an immediate response to the parties' arguments regarding whether Salley should receive a sentence of 210 months or 179 months for the felony murder. The district court stated:

> The [s]tate has argued for 210 months, the defense has argued for 179 months. Considering the files, the records, the proceedings, the statements that were advanced this afternoon, the [c]ourt sentences you, [Salley], to 210 months.

Immediately after stating "the [c]ourt sentences you, [Salley], to 210 months," the district court proceeded to formally adjudicate Salley's guilt and to sentence the offenses in order of occurrence, stating:

> First, you are adjudicated guilty of both of these offenses. On the first [i.e., unlawful-possession], you are committed to the Commissioner of Corrections of the State of Minnesota for a period of 60 months. On the second, second-degree murder, you are committed to the Commissioner of Corrections of the State of Minnesota for a period of 210 months, concurrent sentencing.

In that context, the statement on which Salley relies is reasonably viewed as a ruling on the parties' competing arguments regarding the proper sentence length.[2] That is, the statement merely announced the district court's decision to impose a sentence of 210 months for the second-degree felony-murder offense. To the extent that the district court's

---

[2] Additional context includes the terms of the parties' plea agreement, the district court's statements at the plea hearing regarding the mandated sentencing order, and the district court's reordering of the charges to ensure the court followed that order, all of which clearly indicated that the firearm offense would be sentenced first.

oral sentencing remarks were ambiguous regarding the order of sentencing, we may look to the warrant of commitment. *See State v. Staloch*, 643 N.W.2d 329, 331 (Minn. App. 2002) (stating that although an orally pronounced sentence controls over a written warrant of commitment, a reviewing court may look to the warrant of commitment if an "orally pronounced sentence is ambiguous"). Here, the written warrant of commitment indicates that the district court sentenced the firearm-possession offense first and the felony-murder offense second.

The district court's statement that "the [c]ourt sentences you, [Salley], to 210 months" was merely an inartful way of announcing that the district court had ruled in the state's favor on the disputed sentencing issue and would sentence Salley to serve 210 months. As the postconviction court noted, "[p]erhaps the court could have phrased it differently—the court *will* sentence you, or the court is *about to sentence* you." But given the entire record, including the context of the single statement on which Salley relies, we will not put form over substance.

## II.

The second reason we affirm the postconviction court's denial of Salley's request for relief is that Salley effectively seeks an *unlawful* sentence.

An appellate court has a broad scope of review when a criminal sentence is appealed. *See* Minn. Stat. § 244.11, subd. 2(b) (2022) (stating that an appellate court may review a sentence to determine whether it "is inconsistent with statutory requirements, unreasonable, [or] inappropriate" and may "vacate or set aside the sentence imposed or

9

stayed and direct entry of an appropriate sentence or order further proceedings to be had as the court may direct").

Once again, "[m]ultiple offenses sentenced at the same time before the same court must be sentenced in the order in which they occurred." Minn. Sent'g Guidelines 2.B.1.e; *see Anderson*, 345 N.W.2d at 764 (holding that the sentencing court, in using the *Hernandez* method, was required to sentence the offenses "in the order that the offenses occurred"). If the district court imposes sentences in the wrong order, we remand for resentencing. *State v. Bell*, 971 N.W.2d 92, 107 (Minn. App. 2022), *rev. denied* (Minn. Apr. 27, 2022).

As this case demonstrates, the order of sentencing determines a defendant's final criminal-history score when using the *Hernandez* sentencing method. As to criminal-history scores, the Minnesota Supreme Court has been clear:

> A criminal defendant cannot waive or forfeit review of the criminal history score calculation on which his sentence is based because *district courts must use accurate criminal history scores in order to set mandatory presumptive sentences* that comply with the Minnesota Sentencing Guidelines.

*Maurstad*, 733 N.W.2d at 142 (emphasis added).

Here, it is undisputed that the firearm-possession offense occurred before the felony-murder offense. *See Williams*, 771 N.W.2d at 522 (concluding that the district court did not err in sentencing the appellant's felon-in-possession conviction first and his first-degree assault conviction second because appellant needed the firearm to commit the first-degree-assault offense). Thus, the district court was required to sentence the firearm-possession offense first. Nonetheless, Salley asks us to reason that the district court

sentenced the felony murder before the firearm-possession offense and that his criminal-history score and sentence should be reduced based on that sentencing order. That approach ignores the fact that sentencing the felony murder before the firearm-possession offense would have violated the law and would have resulted in an inaccurate criminal-history score.

As an error-correcting court that is sworn to uphold the law, we fail to see how we could endorse the unlawful sentencing approach that Salley requests: sentencing his offenses out of order, resulting in an inaccurate criminal-history score. Salley does not acknowledge, much less address, this conundrum. Nor does he cite authority indicating that he is entitled to the benefit of an unlawful sentence or an inaccurate criminal-history score. Caselaw indicates he is not so entitled. *See Maurstad*, 733 N.W.2d at 142 ("A criminal defendant cannot waive or forfeit review of the criminal history score calculation on which his sentence is based . . .").

In sum, the district court's use of a criminal-history score of four when sentencing the felony murder was consistent with the sentencing guidelines, sentencing jurisprudence, and the parties' plea bargain. Most importantly, it was consistent with the requirement that "district courts must use accurate criminal history scores in order to set mandatory presumptive sentences that comply with the Minnesota Sentencing Guidelines." *Id.* The district court sentenced Salley's offenses in the correct order, using the correct criminal-history score. There is no basis to reduce the length of his sentence. Thus, the postconviction court did not abuse its discretion by denying Salley's request for relief.

**Affirmed.**